**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CHESTER BRIGGS** | : | |
| | : | |
| **v.** | : | **CA: 06-528S** |
| | : | |
| **A.T. WALL** | : | |

**STATE OF RHODE ISLAND'S MOTION TO DISMISS PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY.**

Now comes the State of Rhode Island, and by and through its attorney, moves to dismiss the above-captioned Petition under 28 USC § 2254 for Writ of Habeas Corpus by a person in State Custody for the reasons set forth in the attached memorandum.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By Its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Jane M. McSoley
**JANE M. McSOLEY, #3136**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on the 3rd day of January, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney(s) of record:

jfcicilline387@aol.com

/s/ Jane M. McSoley_

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CHESTER BRIGGS** | : | |
| | : | |
| **v.** | : | **CA: 06-528S** |
| | : | |
| **A.T. WALL** | : | |

**STATE OF RHODE ISLAND'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY.**

In filing the above-captioned petition, petitioner Chester Briggs takes issue with two Rhode Island Supreme Court decisions, State v. Briggs, 756 A.2d 731 (R.I. 2000) [*hereinafter* Briggs I], in which the Court reversed in part and affirmed in part a decision of the Rhode Island Superior Court, Newport County, which granted the defendant's pretrial motion to suppress his statement to Rhode Island State Police along with evidence seized from petitioner's New Hampshire property by the police, and State v. Briggs, 886 A.2d 735 (R.I. 2005) [*hereinafter* Briggs II], which affirmed the petitioner's first-degree murder conviction.

Briggs was charged by Indictment No. N1/97-0276A with the February 19, 1997 murder of Patricia Jacques of Tiverton. At the conclusion of the pretrial hearing before the late Dimitri, J., on April 27, 1998 in Newport County Superior Court, Justice Dimitri granted the defendant's motion to suppress a statement made to Rhode Island State Police at New Hampshire State Police Headquarters, along with evidence seized from a trash bag in a dumpster situated on the defendant's rental property in New Hampshire in the days following Mrs. Jacques's murder. The State appealed Justice Dimitri's rulings.

On July 17, 2000, in a decision authored by the late Justice Bourcier, the Rhode Island Supreme Court affirmed in part the suppression of the petitioner's statement while sustaining in part the State's appeal, permitting the introduction of that segment of the statement made prior to the point at which the troopers "overstepped the defendant's constitutional barrier and stepped over the line of propriety."[1] Briggs I, 756 A.2d 731, 739.

Briggs's trial commenced nine months later in Newport County Superior Court before Thompson, J., and a jury, on March 19, 2001. Following several weeks of testimony, the jury found the petitioner guilty of murder on April 20, 2001. One week later, on April 27, 2001, Justice Thompson imposed the mandatory life sentence on Briggs. A timely notice of appeal to the Rhode Island Supreme Court was filed. On May 30, 2001, Briggs filed a motion for a new trial based on newly discovered evidence. Following a hearing, Justice Thompson denied that motion. On December 6, 2005, the Supreme Court of Rhode Island issued a decision denying the defendant's appeal on all grounds. Briggs II, 886 A.2d 735.

Briggs subsequently filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. 2254. An order issued by United States District Judge William E. Smith on December 6, 2006 has directed the State of Rhode Island, a designated party petitioner, to file a response on or before January 4, 2007. The State of Rhode Island, by

[1] The Rhode Island Supreme Court also reversed the lower court's decision suppressing the evidence seized during the warrantless search of a trash receptacle located on petitioner's New Hampshire property, ruling that Briggs abandoned his privacy interest in the trash. Briggs I, 756 A.2d at 743-44.

and through its attorney, hereby files this objection with the accompanying memorandum in compliance with that order.[2]

**Standard of Review**

Pursuant to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, no habeas corpus petition filed by a person in state custody shall be granted unless the state court adjudication underlying petitioner's conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1); (d)(2). Williams v. Taylor, 529 U.S. 362, 404-05, 120 S.Ct. 1519, (2000). In Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850 (2002), the Supreme Court elucidated further on this amendment to federal habeas law, emphasizing that the "contrary to" and "unreasonable application" provisions set forth in § 2254 (d)(1) have independent meaning. A federal court may grant habeas relief pursuant to the "contrary clause" if the state court "applies a rule different from the governing law set forth in [the United States Supreme Court's] cases, or if it decides a case differently than [the United States Supreme Court] has done on a set of materially indistinguishable facts." ***Id.*** The writ may also be granted under

[2] If necessary to comply with Rule 5(c) of the Rules governing § 2254 cases, the State will endeavor to obtain copies of the transcripts of the suppression hearing and the trial if this Court so requests. Pursuant to Rule 5(d), the State has submitted the following to this Court along with its Response: a copy of the State/Appellant's Brief filed in the Supreme Court of Rhode Island in support of the State's appeal of the grant of Briggs's pretrial motion to suppress; the Petitioner/Appellant's Brief filed in Rhode Island Supreme Court post-trial in support of Briggs's appeal of his murder conviction; the brief filed by the State of Rhode Island/Appellee filed in response, along with copies of the Rhode Island Supreme Court's decisions in Briggs I and Briggs II.

the "unreasonable application" clause in cases where the state court has correctly identified a legal principle derived from a United States Supreme Court decision, but unreasonably applies it to the facts of a particular case. ***Id.*** This latter inquiry centers on "whether the state court's application of clearly established federal law is objectively unreasonable." ***Id.*** Quoting Williams, the late Chief Justice Rehnquist, writing for the Court, stressed that "an unreasonable application is different from an incorrect one;" in other words, "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* (citations omitted).

The United States Court of Appeals for the First Circuit has interpreted the "contrary to" clause of § 2254 to apply only in situations in which a state court "either applies a test that is inconsistent with one announced by the [United States Supreme] Court or reaches the opposite conclusion on materially indistinguishable facts." Rashad v. Walsh, 300 F.3d 27, 34-35 (1st Cir. 2002). Turning to the "unreasonable application" prong of the statute, a state court is guilty of such when it applies a correct legal standard in an objectively unreasonable manner, unreasonably extends a Supreme Court precedent to an inappropriate context, or fails to extend such a precedent to an appropriate context. *Id.* The "unreasonable application standard, as the First Circuit Court of Appeals observed in Rashad, "does not demand infallibility: a state court's decision may be objectively reasonable even if a federal habeas court, exercising its independent judgment, would have reached a different conclusion." 300 F.3d at 35

The First Circuit Court elaborated on this point further in McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002), again emphasizing that under Williams v. Taylor, an "erroneous application" of Supreme Court precedent is not necessarily equated with an "unreasonable application," as "the mere fact that there was some error or that the state decision was incorrect is not enough." The "unreasonableness" of the ruling must be incrementally "great enough to make the decision unreasonable in the independent and objective judgment of the federal court." "If it is a close question whether the state decision is in error, than the state decision cannot be an unreasonable application." McCambridge v. Hall, 303 F.3d at 36-37. As examples of state court decisions that might be considered unreasonable, the First Circuit Court cited decisions that are devoid of support in the record or that exhibit arbitrary or capricious reasoning. ***Id.*** Moreover, while state court decisions must comply with those United States Supreme Court holdings that are clearly established at the time of the state rulings, it is appropriate for this Court to consider factually similar cases from other lower federal courts in assessing the reasonableness of the state court ruling in issue. Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002).

As a final point, it should be noted that under § 2254 (d)(1), "a state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Rashad, 300 F.3d at 35. Unless petitioner carries this burden, a federal habeas court is obliged to credit the factual findings of state courts at the trial and appellate levels. *Id.* This includes those reasonable inferences drawn by state courts from the evidence presented at trial as well as from the trial record. Rashad, at 39, n. 8.

If a state decision rests on an adequate independent state ground of procedural default, federal habeas review is unavailable absent a showing of cause and prejudice or a showing that a miscarriage of justice will result. McCambridge v. Hall, 303 F.3d at 34 *citing* Strickler v. Greene, 527 U.S. 263, 282, 119 S.Ct. 1936, 1948-49 (1999).

**Discussion**

As Justice Williams, writing for the Rhode Island Supreme Court observed in Briggs II, the petitioner "put[s] forward a list of errors of a Brobdingnagian length" when he unsuccessfully asked that Court to vacate his conviction and grant him a new trial. 886 A.2d at 742. Without any accompanying discussion, Briggs has submitted the same laundry list of errors to this Court in support of his habeas petition without regard to whether they implicate issues of federal constitutional dimension.[3] The State of Rhode Island respectfully submits that because the petitioner has failed to demonstrate that the Supreme Court of Rhode Island either applied law differing from the governing law set forth according to the United States Supreme Court or misapplied legal principles to the facts of his case, he is not entitled to habeas relief.

**1. Ground One: Fourteenth Amendment – Due Process violation of Brady v. Maryland.**

The petitioner claims that the State failed to disclose information in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), in which the United States Supreme Court held that suppression by the prosecutor of evidence violates due process if the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecutor. 373 U.S. at 87, 83 S.Ct. at 1194. Such evidence is material when

[3] The State acknowledges that for federal habeas purposes, the defendant has exhausted all of the arguments presented in his petition in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S.Ct. 1728, 1731 (1999).

"there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985). Discussing Brady violations in the context of habeas actions, the United States Supreme Court noted in Strickler that, "there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." 527 U.S. at 19-20, 19 S.Ct. at 1948.

One of the petitioner's allegations concerns Timothy Ayers, who testified on behalf of the State at Briggs's trial. Ayes told the jury that when he and the petitioner were inmates at the Adult Correctional Institutions, Briggs admitted to him that he had murdered Patricia Jacques. Ayers's testimony included details about the crime known only to authorities. The petitioner asserts that the prosecutor, in violation of deliberately withheld information about Ayers, specifically that it failed to disclose that the witness cooperated with police in another case and in so doing, gave information later shown to be false. As petitioner well knows, this is an affirmative misrepresentation, made both to the Rhode Island Supreme Court and now, to this Court.

"A determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254 (e)(1); Norton v. Spencer 351 F.3d 1, 6 (1st Cir. 2003). In its decision in Briggs II, the Rhode Island Supreme Court recognized that "the trial justice [at Briggs's trial] clearly stated that she found no evidence of discovery violations, despite defendant's repeated allegations to the contrary. Furthermore, in her written decision on defendant's posttrial motion for new trial, she

expressly ruled that the alleged discovery violations with respect to Ayers did not constitute discovery violations." 886 A.2d at 755. The Rhode Island Supreme Court noted that the trial justice found that Ayers did not withdraw the statements made in the other case *until after the jury delivered its verdict in Briggs's case;* because the Court's review of the transcript failed to "cast any doubt on the trial justice's findings," and because Briggs failed to point to any evidence that would support the contrary conclusion that the prosecutor knew beforehand that Ayers gave police false information in another case, the Court upheld the ruling. 886 A.2d at 758, n.12. Moreover, the Supreme Court also found that "counsel effectively cross-examined Ayers on his cooperation with the State," and "his cooperation in the other case was not material to this case," therefore "even with that information, the jury still would have convicted defendant." 886 A.2d at 758.

Briggs also complains that Brady was violated by the State's failure to produce Ayers's complete criminal history. The criminal history provided to the defense by the prosecution did not list three of his rather extensive history that included thirty-four convictions. The trial justice found that any resulting prejudice to the defendant was, by necessity, extremely minimal. The Rhode Island Supreme Court agreed, noting that the new evidence was "merely cumulative" citing the defendant's extensive cross-examination of the witness concerning his record. Disclosure of the other three convictions would not have resulted in a different verdict. 886 A.2d at 757-58. Because Briggs has failed to make any show with clear and convincing evidence that the Rhode Island Supreme Court erred in its fact-finding and because the information at issue did

not meet the Bagley standard of materiality, he has failed to demonstrate grounds for habeas relief.

**Ground Two – Alleged Violation of Confrontation Clause.**

The petitioner cites a laundry list of witnesses, claiming that he was not permitted to cross-examine any of them effectively. The Supreme Court of Rhode Island found otherwise, and this ruling is solidly supported by the trial record. While it acknowledged that the right of cross-examination "is the primary means by which a criminal defendant may challenge the veracity of a witness's testimony," the Supreme Court also recognized that the right is limited to affording "reasonable latitude to inquiry into bias, motive or prejudice on the part of a witness." Briggs II, at 744-45. In Rhode Island, a trial justice is imparted with discretion to permit or limit counsel's cross-examination of witnesses and the exercise of said discretion will not be disturbed upon a showing of clear abuse. *Id.* In light of this discretion, he or she may foreclose a proposed line of questioning if it is not relevant to the trial issue, or if the proposed questioning, even if relevant, is outweighed by any of the reasons prescribed in Rule 403 of the Rhode Island Rules of Evidence. *Id.* For purposes of clarity, the State will engage in a very brief discussion concerning each of the witnesses subject to petitioner's complaint.

**Elwood Johnson –** Briggs complains that he was precluded from eliciting testimony from Rhode Island State Police Sergeant Johnson about the nature of his interrogation about the murder of Mrs. Jacques. In Briggs I, the Rhode Island Supreme Court ruled upon the State's appeal of the trial court's suppression of the statement given to Rhode Island State Police at New Hampshire State Police Headquarters. After listening to taped recording of the interview of Briggs, the Court ruled that the

petitioner's responses were voluntary up to a certain point where Briggs declared that he was exhausted an unable to think straight; thus, while the hearing justice erred in suppressing that portion of the statement deemed voluntary, all statements given to police after that point in the interview had been properly excluded from evidence because the State failed to show that they were not the product of an overborne will. Briggs II, 886 A.2d at 745, *citing* Briggs I, 756 A.2d at 739. At Briggs's trial, the petitioner wished to cross-examine Sergeant Johnson about his [the officer's] conduct during the *entire* interview – that is – the segment allowed into evidence along with the excluded portion in order to demonstrate that petitioner's cooperation was obtained because he feared physical harm at the hands of police. The Rhode Island Supreme Court ruled that the trial justice did not abuse her discretion when she restricted the petitioner's line of cross-examination to Sergeant Johnson's conduct during the initial part of the interview, that is, the part deemed admissible by the Rhode Island Supreme Court; the Court noted that it had already ruled that the conduct of the Rhode Island State Police during the latter part of the interview was constitutionally out-of-bounds, and Briggs was provided with his remedy in the exclusion of the evidence elicited as a product of that improper questioning. Briggs II, 886 A.2d at 745. The Court also deemed said restriction harmless, as the taped interview of the excluded portion of the testimony in issue, although revealing "*sexually explicit questions* with little or no relevance" directed by police towards the petitioner, uncovered no threats of physical harm to Briggs by police. *Id. citing* Briggs I. Thus the inquiry at issue would have availed petitioner nothing in the way of exculpatory evidence.

The petitioner alleges that he was also restricted in his attempt to confront this witness concerning allegedly inconsistent statements made by Cooper Jacques, the decedent's husband the night of the murder.[4] The Rhode Island Supreme Court found that the trial justice did not abuse her discretion when she determined that the statements in question, about Mrs. Jacques's recollection of the episode of the television program *Law & Order* Mr. Jacques had watched earlier that evening and his subsequent statement indicating his failure to recollect the show, were "not sufficiently inconsistent" to be used for impeachment purposes. Briggs II, 886 A.2d at 746.

**Robert White & William Lyonnais** Briggs also claims that he was not permitted to effectively cross-examine State witnesses Robert White and William Lyonnais about charged and uncharged crimes. On appeal, the Rhode Island Supreme Court, having examined the record, concluded that the petitioner's allegations lacked merit because counsel was allowed, contrary to petitioner's assertions, to impeach both of these witnesses with evidence of their prior crimes. Briggs II, 886 A.2d at 748-49.

**Alan Shepard** The petitioner asserted that he was not allowed to cross-examine Alan Shepard, who served Briggs at a Tiverton gas station on the night of the murder, about inconsistencies in whether the man he witnessed wore eyeglasses. The record reveals that counsel once again, was, in fact, permitted to ask the witness the question in issue, and was only halted by the trial justice when he asked a completely irrelevant question for the sole purpose of humiliating the witness. Noting that a trial justice acts

[4] Due to advanced age and health problems, Cooper Jacques was unavailable to testify at trial. Both parties agreed to have Mr. Jacques's sworn testimony from the defendant's bail hearing admitted at trial. Brief of State /Appellee, State v. Briggs, No, 2003-404 C.A., p. 3, n. 2.

well within the parameters of her discretion when she limits cross-examination that "borders on harassment," the Rhode Island Supreme Court found that by the questions in issue, counsel "sought to place an exclamation point on a successful challenge of the credibility of Shepard by embarrassing him." Briggs II, at 747-48.

**Dr. James Weiner** At trial, this forensic pathologist testified that he observed no blood under Ms. Jacques's fingernails at autopsy. During cross-examination, petitioner's counsel attempted to refresh this witness's recollection with a report prepared by ***another witness***, which indicated the possible presence of blood under the nails. The Rhode Island Supreme Court upheld the trial justice's refusal to allow this tactic by the defense with the observation that Dr. Weiner testified to no failure to recollect what he had observed; thus the witness could not properly "refresh his recollection" with observations recorded by someone else. Briggs II, 886 A.2d at 746-47.

**Lt. Thomas Kaminski** – The Rhode Island Supreme Court found that the trial justice did not abuse her discretion when she refused to allow defense counsel to cross-examine Lt. Kaminski in minute detail about every one of the twenty-three people whom he interviewed during the course of the investigation of Ms. Jacques's murder, whether or not those persons proved germane to the inquiry. Because Rule 403 of the Rhode Island Rules of Evidence permits a trial justice to restrict examination about irrelevant subject matter, the trial justice acted within her discretion when she, having found that (1) individual names of every person interviewed was not relevant to the witness's understanding of the case; and/or (2) such an exercise would be a waste of time. Briggs II, 886 A.2d at 747.

**Nicholas Tella** Briggs's contention that he was improperly restricted in his attempt to cross-examine Corporal Nicholas Tella about twist-ties in the cab of his truck constitutes another completely barren recitation, as the Supreme Court found on appeal that the corporal testified that he never observed such evidence. Briggs II, 886 A.2d at 747.

**Jane Wentworth** The petitioner makes another specious argument, completely unfounded by the record, that he was precluded from impeaching this witness with the terms of her lease agreement with the petitioner. As the Rhode Island Supreme Court noted in its opinion, the trial record demonstrates that this assertion is false; the petitioner succeeded in having the lease, the terms of which contradicted the witness's trial testimony, admitted as a full exhibit. Briggs II, 886 A.2d at 749.

The State respectfully submits that Briggs has failed to show that the Rhode Island Supreme Court' s rejection of his claims unreasonably applied clearly established federal law or was based on an unreasonable determination of the facts. While it is indisputable that the Confrontation Clause guarantees the defendant in a criminal case the right to confront the witnesses against him, the opportunity for cross-examination does not amount to "cross-examination that is effective in whatever way, and to whatever extent the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S.Ct. 1431, 1435 (1986). The right to confrontation "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046 (1973). To this end, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other

things, harassment, prejudice, confusion on the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." ***Id.*** ***See*** Morris v. Burnett, 319 F.3d 1254, 1268 (10th Cir. 2003) (limitation on petitioner's right to cross-examine witness involved neither unreasonable application of clearly established Federal law nor based on an unreasonable determination of the facts, thus it did not provide grounds for habeas relief).

**Ground Three – Violations of Due Process, Equal Protection and Compulsory Process Clause.**

The petitioner makes the sweeping statement that "the trial court repeatedly frustrated [his] effort to present a defense." He offers only two specific allegations, however.

**Exclusion of Bruce Sartwell's Testimony** – Petitioner claims that the trial justice prevented this witness from offering testimony that would have rehabilitated several alibi witnesses. Briggs contended further that the statements in issue qualified as prior consistent statements. In addressing this contention, the Supreme Court of Rhode Island acknowledge that a statement is not deemed hearsay under the Rhode Island Rules of Evidence 801 (d)(1)(B) when "the declarant testifies at trial *** and is subject to cross-examination concerning the statement and the statement is consistent with the declarant's testimony, and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Briggs II, 886 A.2d at 750-51. The Court found further, however, that the trial justice did not abuse her discretion because she determined, using Rule 801's "temporal requirement" that they were not made before the alleged influence or motive to fabricate arose. Thus, the rule did not remove these statements from the realm of hearsay in accordance with the ruling

made by the United States Supreme Court in interpreting Federal Rule 801 in Tome v. United States, 513 U.S. 150, 157, 115 S.Ct. 696, (1995)("the consistent statements must have been made before the alleged influence, or motive to fabricate, arose"), and followed by the Rhode Island Supreme Court in State v. Haslam, 663 A.2d 902, 908 (R.I. 1995). Briggs II, 886 A.2d at 750-01.

**Exclusion of Patricia McLeod's Testimony** – With this witness, the petitioner sought to impeach the State's witness Timothy Ayers, who testified that he volunteered at Meeting Street School, with testimony from Ms. McLeod, an employee of that school to testify that Ayers had never been a volunteer there. The trial justice excluded this testimony, citing the Rhode Island Supreme Court's holding in State v. Tutt, 622 A.2d 459, 462 (R.I. 1993) for the proposition that a party may not impeach a witness on collateral matters with the introduction of extrinsic evidence. R.I. R. Evid. 608(b). *See also* United States v. Thomas, 467 F.3d 49, 56 (1st Cir. 2006) ("It is 'well-established that a party may not present extrinsic evidence to impeach a witness by a contradiction on a collateral matter'").

The State respectfully submits that once again, Briggs has failed to demonstrate that the Rhode Island Supreme Court applied a rule different from the governing laws set forth by the United States Supreme Court.

**Ground Four – Denial of a Fair Trial**

Despite the Rhode Island Supreme Court's ruling that there were no discovery violations, petitioner claims that the State failed to turn over the fact that a twist tie similar to the one found at the murder scene was found in the cab of Briggs's truck. This

is another outright misrepresentation to this Court. As the Rhode Island Supreme Court noted in its decision, the twist tie, while not seized from the cab of the defendant's truck and thereby inventoried by New Hampshire State Police, was "clearly reveal[ed]" in a photograph of the front seat provided to the defendant in discovery. The Supreme Court rejected the defendant's claim of a discovery violation, noting that, "the State is not required to provide defendant with a detailed narration of the testimony of a witness." Briggs II, 886 A.2d at 756-57. Moreover, a defendant's failure "'to use the provided discovery for investigatory purposes should not lead to dismissal of the case.'" ***Id.***

Briggs has shown no dereliction by the State and certainly none of constitutional dimension. In the first place, the evidence does not qualify as Brady material because it is not favorable to the petitioner. Strickler v. Green, 527 U.S. at 281-82, 119 S.Ct. 1948-49. Its provision to the defendant is unlikely to have produced a different verdict. ***Id.*** The Brady rule does not apply "when the evidence in question is available to the defendant from other sources." United States v. Wilson, 901 F.2d 378, 380 (4th Cir. 1990).

**Lyonnais's Criminal History** – Because they were not recorded on the National Crime Information Computer Index, the State unintentionally did not disclose charges pending in Massachusetts against this State witness. The petitioner was, however, made aware of the previously undisclosed charges and used them in his cross-examination of this witness; thus, as the Rhode Island Supreme Court found, a new trial would produce the exact same cross-examination of this witness. Briggs II, 886 A.2d at 756.

**Substitution of Witness Hanson for Witness Burowski** – This issue arose as a result of a thinly-veiled attempt by the defense to keep out evidence of phone calls Briggs

made enroute from Rhode Island to New Hampshire shortly after he murdered Mrs. Jacques, thus demonstrating to the jury that the petitioner was not in New Hampshire for the entire evening the murder occurred, as he told police. After challenging the substituted witness, petitioner demanded a hearing to challenge the reliability of phone records. The Rhode Island Supreme Court dismissed Briggs's challenge to the expert testimony by citing United States v. Wills, 346 F.3d 476, 490 (4th Cir. 2003) for the proposition that "phone records have been held to be inherently reliable under the business records exception to the hearsay rule;" thus, the rule governing expert testimony did not apply. Briggs II, 886 A.2d at 752. Moreover, even if the rule did apply it would not provide Briggs with grounds for issuance of the writ because the United States Supreme Court has held repeatedly that, "the trial judge has broad discretion in the matter of the admission of exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous," and Briggs has shown no abuse of discretion of constitutional dimension here. Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119 (1962).

**Failure to Disclose Entirety of Frederick Murdoch's Testimony** – See Brief of State/Appelle, p. 82-84. The State's response is that "it is not obligate[d] to provide a defendant with a detailed narration of the testimony of its witnesses." State v. Woodson, 551 A.2d 1187, 1192 (R.I. 1998).

The petitioner has failed to demonstrate that the Rhode Island Supreme Court either applied reasoning inconsistent with established federal law or reached an opposite conclusion from the United States Supreme Court when it considered materially indistinguishable facts.

**<u>Ground Five – Involuntary Confession</u>**

In ruling upon the State's appeal of the Superior Court's suppression of Briggs's statement to Rhode Island State Police, the Rhode Island Supreme Court acknowledged that both federal and state constitutions "bar the use in a criminal trial of a defendant's involuntary statements." Briggs I, 756 A.2d at 738-39. After reviewing the record, and listening to the recorded tapes, the Rhode Island Supreme Court pronounced itself unable to say that the hearing justice erred in finding that Briggs was at custody when he was questioned by Rhode Island State Police at New Hampshire State Police barracks; after "applying the law to the historical facts," however, the Court did conclude that the justice erred in excluding the statement ***in its entirety***. 756 A.2d at 738-39. Noting that the defendant had executed a waiver of rights form and evinced an intelligent waiver of those rights, the Rhode Island Supreme Court noted that :

> The police did question the defendant for almost thirteen hours and the questioning does appear to have escalated 'in tone and aggressiveness and style.'" As the recorded tapes disclose, on several occasions, the defendant also informed the officers that he was tired, but nevertheless, they continued to question him.

Briggs I, 756 A.2d at 739. The Rhode Island Supreme Court analyzed the issued further:

> Those factors alone, while not to be condoned, do not serve to automatically overcome the voluntariness of the defendant's statements. However, when in response to a question, the defendant informed the officers that, "I'm so tired now, I can't really think," and, when the officers thereafter escalated the tone of their questioning and began to ask increasingly sexually explicit questions of little or no relevance, they then overstepped the defendant's constitutional barrier and stepped over the line of propriety. From that point on, his answers no longer were voluntary. We conclude that the trial justice erred when he proceeded to exclude the defendant's *entire* statement given at the police station. We discern that the defendant's statements before question 1261, page 186, clearly were voluntary. Because those

> statements were untainted by the officers' later improprieties, they should not have been suppressed, and the trial justice clearly erred in doing so. While a baby's bath water may get dirty, that fact alone does not justify throwing the baby out with the dirty water.

756 A.2d at 739.

The petitioner has shown no unreasonable application of well-established federal law here. In the first place, he conveniently ignores the fact that the suppression of a large portion of his statement to police was upheld, precisely because police stepped over the constitutionally-permitted line. Briggs sought, and was provided with, a legal remedy for this improper police conduct by the Rhode Island courts.

He has shown no unreasonable application of well-established federal law concerning that segment of the interview deemed admissible by the Supreme Court of Rhode Island in Briggs I. A statement to police is deemed to have been coerced only in those cases where the conduct of law enforcement officials was such to have overcome the accused's will to resist. Beckwith v. United States, 425 U.S. 341, 347-48, 96 S.Ct. 1612, 1616-17 (1976). To this end, the Supreme Court of the United States has recognized that, "any interview of one suspected of a crime will have coercive aspects to it." Oregon v. Mathiason, 429 U.S. 495, 97 S.Ct. 711, 714 (1977). The Court has also recognized that "very few people give incriminating statements in the absence of official action of some kind." Schneckloth v. Bustamante, 412 U.S. 218, 224, 93 S.Ct. 2041, 2046 (1973). The fact that a confession is deemed voluntary for evidentiary purposes does not imply that the accused wanted to confess or that his confession was "completely spontaneous, like a confession to a priest, a lawyer, or a psychiatrist." Miller v. Fenton, 796 F.2d 598, 605 (3rd Cir. 1986). Federal courts have always recognized that police have a function to perform, and, to that end, "there is nothing wrong with efforts to create

a favorable climate for a confession." Ledbetter v. Edwards, 35 F.3d 1062 (6th Cir. 1994) *quoting* McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1989).

While the State certainly acknowledges that any form of physical abuse by police will render a statement involuntary, the Rhode Island Supreme Court, having reviewed the taped version along with the transcript of the statement, found no evidence of any physical threats directed towards petitioner by police. United States v. Jenkins, 938 F.2d 934, 940 (9th Cir. 1988); Briggs II, 886 A.2d at 745.

Petitioner's complaint that the officers accused him of lying implies that the two state troopers who interviewed him about Patricia Jacques's death were obliged to give credence to his blatant falsehoods. But the officers violated no federally mandated precepts during the admitted portion of the interrogation; it is, of course, not constitutionally unacceptable for interrogators to urge a suspect to tell the truth. United States v. Ballard, 568 F.2d 1060, 1063 (5th Cir. 1978), and it is perfectly permissible for police officers to try to elicit the truth by letting a suspect know that they do not believe his story United States v. Wolf, 813 F.2d 970, 975 (9th Cir. 1987), or to advise him that a confession would be "helpful" to him. United States v. Davidson, 768 F.2d 1266, 1271 (11th Cir. 1985). In the same vein, the mere fact that a police officer, without more, raised his voice does not render a confession involuntary. Martin v. Wainwright, 770 F.2d 918, 925-27 (11th Cir. 1985); United States v. Ingle, 157 F.3d 1147, 1150 (8th Cir. 1998). As a final point, it is well-established that police officers may inform a suspect, truthfully or otherwise, of evidence they have against him. Frazier v. Cupp, 394 U.S. 73, 739, 89 S.Ct. 1420, 1425 (1969). In fact, interrogation becomes constitutionally unacceptable only when circumstances prevent the person being questioned from making

a rational choice. Weidner v. Thiret, 866 F.2d 959, 960-63 (7thCir. 1989). The Supreme Court of Rhode Island did find that at a certain point in the interview, the officers' conduct did preclude the petitioner from making a rationale choice to speak and the Court precluded the State from using the evidence gathered from that point. The defendant was provided with a remedy for the wrong he incurred. Because Briggs has failed to show that the Supreme Court of Rhode Island unreasonably applied federal law when it ruled on his case, he has failed to establish a case for issuance of the writ of habeas corpus.

**CONCLUSION**

For the reasons set forth above, the State of Rhode Island, the designated Respondent, respectfully submits that the petitioner's petition for writ of habeas corpus should be denied and dismissed.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By Its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Jane M. McSoley
**JANE M. McSOLEY, #3136**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on the 3rd day of January, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney(s) of record:

jfcicilline387@aol.com

/s/ Jane M. McSoley_