**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CHESTER BRIGGS** | : | |
| | : | |
| **v.** | : | **CA: 06-528S** |
| | : | |
| **A.T. WALL** | : | |

**STATE'S OBJECTION TO PETITIONER'S**
**MOTIONS FOR AN EVIDENTIARY HEARING AND FOR DISCOVERY**

Now comes the State of Rhode Island, designated party respondent in the above-titled action, and hereby objects to the petitioner Chester Briggs's motions for an evidentiary hearing and for discovery in the above-captioned case for the reasons set forth in the attached memorandum.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By Its Attorneys,
**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Jane M. McSoley
**Jane M. McSoley, #3136**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on the 22nd day of June, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney(s) of record:

C. Leonard O'Brien Jr., Esquire
len@ridefense.com

/s/ Jane M. McSoley

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CHESTER BRIGGS** | : | |
| | : | |
| **v.** | : | **CA: 06-528S** |
| | : | |
| **A.T. WALL** | : | |

**MEMORANDUM IN SUPPORT OF STATE'S OBJECTION TO PETITIONER'S MOTIONS FOR AN EVIDENTIARY HEARING AND FOR DISCOVERY**

In support of his habeas petition, Chester Briggs has requested the provision of extensive discovery related to Timothy Ayers, a prosecution witness at Briggs's trial for the February 19, 1997 murder of Patricia Jacques at her home in Tiverton, Rhode Island. He has also requested an evidentiary hearing. For the reasons set forth below, the State maintains that Briggs is deserving of neither.

**1. The Discovery Request**

Broadly speaking, a habeas petitioner is not entitled to discovery as a matter of ordinary course. Bracy v. Gramley, 520 U.S. 899, 904, 117 S.Ct. 1792, 1796-97 (1997). Under Rule 6(a) of the Federal Rules Governing § 2254 cases, he is entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."[1] Harris v. Nelson, 394 U.S. 286, 289, 89 S.Ct. 1082, 1086 (1969). A petitioner demonstrates "good cause" for the discovery process to be

---

[1] As noted by Judge Baer of the United States District Court for the Southern District of New York in his decision denying Rule 6(a) discovery to the petitioner in Green v. Artuz, 900 F.Supp. 267, 271 (S.D.N.Y. 1998), the Advisory Committee Notes to that rule make clear that its adoption represented "no intention to extend to habeas corpus, as a matter of right, the broad discovery provisions ...of the new [Federal Rules of Civil Procedure]." Rule 6 Advisory Committee Notes (*quoting* Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082 (1969).

implemeted in a habeas case only when he "establishes a prima facie claim for relief." *Id.;* Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000).

The decision issued by the United States Supreme Court in Bracy illustrates what that Court interpreted as adequate cause to warrant the implementation of the discovery provision in a habeas action. The petitioner in that case was convicted on charges of armed robbery, kidnapping and murder and sentenced to death by Judge Thomas Maloney. Following a subsequent federal investigation, Judge Maloney was convicted of taking bribes from defendadnts in criminal cases. 520 U.S. at 900-01, 117 S.Ct. 1795.

Bracy invoked Rule 6(a) in seeking habeas relief based on the claim that his trial was tainted by judicial bias. In support of his petition, Bracy cited evidence from Maloney's trial which established that the judge was fixing cases around the time of petitioner's conviction, and although no bribe was paid in his particular case, Bracy cited further evidence that the judge engaged in a pattern of conduct designed to cover up his corruption that included slanting his rulings in favor of the prosecution in those cases in which he received no bribe. 520 U.S. at 902-03, 117 S.Ct. 1796. Bracy's discovery request included (1) the sealed transcript of the judge's trial; (2) reasonable access to the prosecution's materials in the judge's case; (3) the opportunity to depose persons associated with Maloney and (4) a chance to search Maloney's rulings for a pattern of pro-prosecution bias. The Northern District of Illinois denied the petition and the supplemental request for discovery, concluding that Bracy had failed to show good cause to justify further discovery. 520 U.S. at 902-03, 117 S.Ct. at 1796. The Seventh Circuit Court of Appeals affirmed by a divided vote, holding that petitioner's theory was a plausible one, but "not sufficiently compelling to show that judicial bias actually infected

his trial." Finding that Bracy had not shown good cause for discovery as required by Habeas Corpus Rule 6(a), the Seventh Circuit concluded that "even if petitioner were able to uncover evidence that Maloney sometimes came down hard on defendants who did not bribe him, it would not show that he followed the practice in *this* case." 520 U.S. at 903, 117 S.Ct. at 1796-97.

The United States Supreme Court granted certiorari in order to address whether Bracy should have been granted discovery under Rule 6(a). Justice Rehnquist's opinion cited the presence of abundant evidence produced after petitioner's trial during the investigation of Judge Maloney, revealing not only that the judge, along with a number of defense attorneys, was "thoroughly steeped in corruption," but that actual bias may well have infected petitioner's trial. Bracy's trial lawyer was a former associate of Judge Maloney's shown to have been complicit in the scheme, and some evidence existed that he was appointed with the understanding that his defense of petitioner would be conducted in such a way as to camouflage the existence of the web of corruption. 520 U.S. at 907-08, 117 S.Ct. at 1798-99. Reversing the Seventh Circuit Court of Appeals's denial of Bracy's discovery request, the Supreme Court acknowledged its usual indulgence in the presumption that "public officials have properly discharged their official duties," but noted that this presumption had been "soundly rebutted" in the petitioner's case. 520 U.S. at 909, 117 S.Ct. at 1799. Citing Harris for the proposition that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is...entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for adequate inquiry," the Court emphasized that Bracy had cited evidence showing not only that

Judge Maloney had taken bribes in other criminal cases, but also lent support to the theory that he was biased ***in petitioner's own case.*** 520 U.S. at 908-09, 117 S.Ct. at 1799. Thus, although petitioner might ultimately be unable to to demonstrate the existence of actual bias at his own trial to warrant habeas relief, he had successfully demonstrated good cause to pursue his claim through the invocation of Rule 6(a) discovery. ***Id.***

Here, Briggs's demands for nothing less than "a full examination of the unholy relationship between Timothy Ayers and the State of Rhode Island" falls far short of the bar in demonstrating good cause to obtain the extensive information he requests through the invocation of Rule 6(a). In the first place, his request is not of the "specific and limited" nature demanded by federal courts interpreting Rule 6(a), but instead constitutes the type of open-ended "fishing expedition" these courts have condemned. Williams v. Bagley, 380 F.3d 932, 976 (6th Cir. 2004). Furthermore, Briggs fails to demonstrate that the evidence he requests is material in nature.

While Briggs's memorandum in support of his request contains a somewhat exhaustive discussion of what constitutes material evidence, it slides over the application of that standard to the facts of his particular case. In Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct.1936, 1948, the Supreme Court observed that even though the term "Brady violation"[2] is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence...strictly speaking, there is never a real Brady violation unless the nondisclosure was so serious that there is a reasonable probablity that the suppressed evidence would have produced a different verdict." In this same vein the Court noted that a Brady violation consists of three essential components, one of which is

[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963).

that actual prejudice must have ensued to the defendant. In the absence of such a showing, petitioner fails to satisfy the "materiality" element essential to establish a Brady violation that will warrant habeas relief. ***Id***

The Sixth Circuit Court of Appeals invoked this principle when it brought a halt to the"fishing expedition" attempted by a death row inmate who unsuccessfully petitioned for habeas relief in the United States District Court for the Northern District of Ohio in Williams v. Bagley. The petitioner's appeal to the Sixth Circuit Court of Appeals included a complaint that the District Court should have permitted Rule 6(a) discovery about any promises or inducements offered to a fellow inmate who testified that petitioner confessed to multiple murders in jail. Upholding the District Court's denial of his discovery request, the Sixth Circuit Court termed it "a classic fishing expedition," citing the fact that petitioner did not identify what he hoped to attain with the results of his discovery; moreover, the Court reasoned, "[the witness's] prior convictions provided ample ammunition for attacking [the witness's] credibility and any evidence of inducements for his testimony would have been cumulative." 380 F.3d at 976-77. Where the "undisclosed" evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evdence may be cumulative, and hence not material." United States v. Avellino, 136 F.3d 249, 257 (2nd Cir.1998).

The holding of Walker is most applicable here. Even the most cursory reading of Briggs's trial demonstrates that the jury heard ***ad nauseum*** about "Mr. Ayers's ongoing relationship with the police," his life of continual criminal activity and his well-known

status as an informant. As the Rhode Island Supreme Court noted in denying his appeal of his conviction in State v. Briggs, 886 A.2d 735, 758 (R.I. 2005):

> defendant cross-examined Ayers at trial in great detail about his attempts to cooperate with the state in exchange for favorable treatement. Ayers testified that he wrote multiple letters to the Attorney General offering his cooperation. For example, Ayers admitted that he offered to testify against a 'drug aquaintance' with whom he had committed a crime. [footnote 13]. Counsel for defendant went as far as equating Ayers with "Judas." Thus defendant effectively cross-examined Ayers on his cooperation with the state.[3]

886 A.2d at 758.

As the Rhode Island Supreme Court's opinion notes further, the result of Ayers's criminal history checks uncovered ***thirty-four*** contacts between that witness and law enforcement but failed to reveal ***three*** additional convictions which were garnered between the time that Ayers agreed to testify for the State and the time of his actual trial testimony. 886 A.2d at 757. At the petitioner's motion for a new trial based on newly

---

[3] The Rhode Island Supreme Court's opinion cites a portion of the defendant's "***extensive***" cross-examination on this precise point:

> "And you say to yourself, I'm going to write [the Attorney General] a letter. See if I can trade something for my freedom?"
> "Yes."
> "And you said, 'I want to give you some information about a person who did a B and E'"
> "Yes."
> "Okay, and you said, you had some information about a pawn shop and a fellow that buys stolen goods?"
> "Yes"
> "Then you said, 'I have some information about a person who's robbing toolboxes?'"
> "Yes."
> "You're the fellow that anybody who wants to tell about crimes they go to you?"
> "Not really."

886 A.2d at 758, n. 13 (emphasis added.)

discovered evidence, the trial justice found no evidence to show that the State's failure to disclose was deliberate, and determined that "if the high number of Ayers's criminal convictions was insufficient to convince a jury that it should believe his testimony, then three additional convictions would not have changed the minds of the jurors." 886 A.2d at 757. The Rhode Island Supreme Court agreed. Finding that the failure to disclose did not constitute a Brady violation, the Rhode Island Supreme Court reasoned that although the three additional convictions would have served as impeachment material, the fact that the defendant was able to impeach Ayers with the numerous disclosed convictions mandated the conclusion that the additional convictions would not have resulted in an acquittal, and were thus immaterial under the Brady standard. 886 A.2d at 757-58.

The Rhode Island Supreme Court's opinion also addressed Briggs's allegations based on Ayers's cooperation in the unrelated cases of two fellow inmates, Charles Fuller and Richard Beverly.[4] On October 21, 1999, Ayers provided authorities with a statement in which he claimed that Fuller had confided in him details about the death of Fuller's girlfriend's son, saying that the child had died as the result of a fall down the stairs. That statement was filed in Fuller's case on April 26, 2001, but Ayers never got the chance to testify, as Fuller pleaded guilty to manslaughter prior to the commencement of his trial. After the delivery of the verdict in Briggs's case, Ayers acknowledged to an investigator from the Department of the Public Defender that the information he gave authorities

---

[4] At the hearing on the petitioner's motion for a new trial on the basis of newly-discovered evidence, both Ayers and the prosecutor who handled the prosecution of Beverly testified that the State promised Ayers nothing in return for his cooperation in either Fuller's case or Beverly's.

concerning Fuller must have been false in light of Fuller's subsequent plea. 886 A.2d at 758.[5]

In its decision, the Supreme Court of Rhode Island also addressed Briggs's contention that during Briggs's trial, the State intentionally held back the information about Ayers's involvement in the Fuller case and Ayers's subsequent characterization of his statement as inaccurate. The Court rejected his allegation that the State knew of Ayers's admission about the inaccuracy of his Fuller story before the verdict was reached in Briggs's own case, saying that Briggs "did not point us to any evidence supporting a conclusion that the state was aware of the withdrawal before the jury reached it verdict *and our review of the relevant portions of the transcript and the record in this case does not cast any doubt on the trial justice's finding.*"[6] *Id.* [Emphasis supplied].

The Supreme Court then turned its attention to the question of whether the evidence concerning Ayers's cooperation in other cases constituted material evidence that could form the basis of a Brady violation. Answering that inquiry in the negative, the Court determined that the "sole relevance of this new evidence is to prove Ayers's lack of

---

[5] The petitioner's implication that Ayers knowingly provided authorities with false information is misleading. As the Rhode Island Supreme Court noted in its opinion, "Ayers testified adamantly that, although he now believed his 1999 statement was inaccurate, it was nonetheless true that Ayers was told in 1999 that the act had been accidental." 886 A.2d at 759. The Court further noted that " the trial justice was satisfied with Ayers's testimony at the motion for a new trial in which he maintained he never knowingly lied under oath, but rather that he became convinced [as a result of Fuller's subsequent plea] that what he had been told was, in fact, false. Put differently, *Ayers was not admitting to making a false statement, but to inadvertently delivering one.*" [Emphasis added] 886 A.2d at 759, n. 14.

[6] These factual findings are, of course, "entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2000). The State submits that Briggs has not put forth a scintilla of evidence – let alone a clear and convincing quantity – to undermine the Rhode Island Supreme Court's findings.

credibility," thus constituting "merely impeachment evidence with no direct bearing on defendant's guilt." 886 A.2d at 760. The Rhode Island Supreme Court also considered the "newly-discovered" evidence in light of the wealth of incriminating evidence presented at Briggs's trial and determined that the jury's reception of evidence that Ayers had cooperated in other cases would not have resulted in an acquittal, rendering the evidence immaterial for Brady purposes. ***Id.***

Briggs's discovery request is much like the one denied by the United States District Court for the Eastern District of Texas in Murphy v. Johnson, 205 F.3d 809 (5th Cir. 2000). Murphy filed a habeas claim based on his allegations that the prosecutor improperly coerced a jailhouse informant into testifying falsely against him.[7] His Rule 6(a) request was very similar to the one filed by Briggs, encompassing "all documents, tapes, files, written reports, memoranda, notes, computer disks, or other materials relating to the ...investigation of the case."

Upholding the District Court's denial of Murphy's discovery request, the Fifth Circuit Court of Appeals termed it the type of "fishing expedition" explicitly unauthorized by Rule 6(a). 205 F.3d at 814. Citing Bracy for the proposition that allegations made by a petitioner must be "specific as opposed to merely speculative or conclusory," in order to trigger the rule, the Court of Appeals concluded that petitioner had failed to establish either the existence of any deal between the prosecution and the witness ***or*** even if he did, that the proof the such an agreement would have been material to the outcome of the case. In so doing, the Court cited testimony heard by the jury in

[7] Significantly, Briggs does not attempt to show that Ayers testified falsely against him; Ayers's testimony about his jailhouse conversation with Briggs revealed information known at the time only to investigators of Mrs. Jacques's murder.

which the witness denied any deals, along with that of a fellow inmate that indicated that the witness bore a grudge against petitioner and "wanted to get out of jail at any cost." 205 F.3d at 809. Just as Briggs's trial counsel made every effort to undermine the testimony of Timothy Ayers by highlighting his criminal record and his willingness to sell out fellow inmates in order to better his own situation, petitioner Murphy's trial counsel tried his best to discredit the witness before his jury, alluding to the existence of nefarious deals between him and the prosecution, his desire to avenge himself against the petitioner, and his willingness to do anything to win his release from prison. The Fifth Circuit Court of Appeals found that the failure of this tactic and the "speculative and conclusory" theory raised as grounds for habeas relief did not provide petitioner with cause to open Rule 6(a) discovery or an evidentiary hearing. ***Id*** at 814-15. The State respectfully suggests that the same result should be reached here.

**2. The Request for an Evidentiary Hearing**

The petitioner has requested an evidentiary hearing pursuant to Rule 8(a) of the rules governing habeas corpus. Following the enactment of the Anti-Terrorism and Death Penalty Act in 1996, "Rule 8(a) has been interpreted to vest discretion in district courts to conduct an evidentiary hearing if not barred by [28 U.S.C.A.] § 2254 (e)(2)." Guidry v. Drake, 397 F.3d 306, 323 (5th Cir. 2005). Subsection (e)(2), in turn, mandates that a habeas petitioner is entitled to an evidentiary hearing only when he asserts additional facts which, if shown to be true, would entitle him to habeas relief, when those facts are in dispute, and when the state courts did not provide a full and fair opportunity to litigate the claim. 28 U.S.C.A. § 1154 (e)(2). Stanford v. Parker, 266 F.3d 442, 459 (6th Cir. 2001) (quoting Wilson v. Kemna, 12 F.3d 145, 146 (8th Cir. 1994). As

discussed above, the evidence about Timothy Ayers that is the subject of petitioner's request was not material; not only did the jurors hear abundant evidence concerning Ayers's criminal conduct as well as his frequent role as informant at the Adult Correctional Institutions, but the amount of evidence incriminating Briggs in the death of Patricia Jacques was voluminous, leaving no doubt that they would have convicted him despite hearing that a single witness whom they beleved to have "only" thirty-four convictions actually had thirty-seven, and that that same witness had given information, sometimes unreliable, in other cases.

Having been convicted by the weight of overwhelming evidence at his trial, Briggs, with his speculative allegations, now attempts to transform his federal habeas proceeding into a second trial. The Supreme Court of the United States has forbidden this, charging federal courts "to preserve 'the state trial on the merits [as] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing.'" Byrd v. Collins, 209 F.3d 486, 516 (6th Cir. 2000) quoting Wainwright v. Sykes, 433 U.S. 72, 90, 97 S.Ct. 2497, 2508 (1977). As evidenced by the record in this case, Briggs's claims, while devoid of merit, have been the subject of extensive litigation in the state Superior and Supreme Courts. His allegations are based on nothing more than pure speculation, and he has failed to establish any information that would warrant relief in federal court.

Wherefore the State of Rhode Island respectfully requests that petitioner's request for discovery and for an evidentiary hearing should be denied and dismissed.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By Its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Jane M. McSoley__
**Jane M. McSoley, #3136**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

## CERTIFICATION

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on the 22nd day of June, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney(s) of record:

C. Leonard O'Brien Jr., Esquire
len@ridefense.com

/s/ Jane M. McSoley__