UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHESTER R. BRIGGS, Plaintiff, | ) | |
| v. | ) | C.A. No. 06-528 S |
| A. T. WALL, Director, Rhode Island Department of Corrections, Defendant. | ) | |

**Memorandum and Order**

William E. Smith, United States District Judge.

Chester R. Briggs ("Briggs" or "Petitioner"), an inmate incarcerated at the Rhode Island Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction of first degree murder. Briggs also filed a motion for discovery and a motion for an evidentiary hearing. The Attorney General of the State of Rhode Island ("State"), designated a party-Respondent, moved to dismiss the petition and objected to Briggs' motion for discovery and his motion for an evidentiary hearing.

For the reasons set forth below, Briggs' motion for discovery is denied, Briggs' motion for an evidentiary hearing is denied, the State's motion to dismiss is granted, and Briggs' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and dismissed.

# I. Background[1]

## A. Introduction

On Wednesday, February 19, 1997, Patricia Jacques was found fatally shot near the stables adjacent to her Tiverton, Rhode Island home. At the scene of the crime, the police found a handwritten note addressed to "Chester," with Petitioner Chester Briggs' fax number on it. The note indicated that money that Briggs was holding for Jacques had not yet been returned. Briggs had concealed some $80,000 belonging to the victim at her request to avoid creditors and the Internal Revenue Service. At the time of the murder, Briggs had been in the process of returning those assets.

On February 21, 1997, members of the Rhode Island State Police and the Tiverton police visited Briggs at his residence in New Hampshire. Briggs invited the officers into his home and told them that he had been to the victim's home on February 18, 1997, to give her $5,000. Briggs revealed that the victim called him the next day (the morning of her murder) and he volunteered to show the

[1] The facts are culled from the state court decisions in this matter. See State v. Briggs, 756 A.2d 731 (R.I. 2000) ("Briggs I"), State v. Briggs, No. N1/97-026A, 2003 WL 302325 (R.I. Super. Jan. 16, 2003) ("Briggs II"), and State v. Briggs, 886 A.2d 735 (R.I. 2005) ("Briggs III"). Pursuant to 28 U.S.C. § 2254(e)(1), factual determinations made by the state courts are presumed correct.

police his caller ID box. He also informed the police that he kept a gun in the house and allowed the police to inspect it.[2]

Soon thereafter, police officers asked Briggs to accompany them to the New Hampshire State Police Headquarters for questioning. Briggs readily agreed. During the course of the questioning, Briggs casually and readily explained his relationship with the victim. The interview, however, took an unpleasant turn when the police officers seized on the knowledge of Briggs' sexual orientation, making numerous references to his "closet" homosexuality. Briggs was

> "cajoled, demeaned, threatened with prosecution for obstruction and child molestation. He was consistently called a liar. Impliedly, his job was threatened. He was yelled at, and on occasions, the Detective swore at [Briggs]. The officers were persistent in their questioning of [Briggs'] sexual preference and his overall sex life."

State v. Briggs, 756 A.2d 731, 738 (R.I. 2000) ("Briggs I").

Nonetheless, during the course of the interview, Briggs repeatedly denied any involvement with the murder. Indeed, Briggs informed the police that he was in New Hampshire at the time of the crime. The State of Rhode Island, however, subsequently indicted Briggs for the first degree murder of Patricia Jacques.

---

[2] During the visit to New Hampshire, the police officers seized trash that had been abandoned by Briggs which included documents in his name, records of fax transmissions to the victim, clothing, and pair of new, but mud-covered sneakers.

B. Pre-Trial Proceedings

Following his indictment, several pre-trial skirmishes ensued, including a motion to suppress Briggs' statement to police. A Superior Court justice, after a hearing, found that his statement was involuntary, "due to the fact that the conduct of the police was inherently coercive, impairing and depriving [Briggs'] right of [his] freedom of choice." Briggs I, 756 A.2d at 738. The Superior Court justice ordered suppression of the entire statement made to the police. Id. On appeal, the Rhode Island Supreme Court reversed in part, finding that, while the police officers "overstepped [Briggs'] constitutional barrier and stepped over the line of propriety," the entire statement need not be suppressed. Id. at 739. Rather, only at a certain point did Briggs' statement become involuntary. Thus, the State was permitted to utilize a portion of the statement at trial, before the police officers became "aggressive" and unprofessional. Id. at 739.

C. Trial

The trial commenced before a Newport County jury. The State presented the testimony of numerous witnesses. Witness Alan Shephard placed Briggs in Tiverton on the night of the murder. Shephard, who worked at Tiverton Getty on Main Road in Tiverton, testified that Briggs bought gas from him on the night of the murder. Shephard testified that he remembered Briggs because he

was the last customer of the night, and that he drove a 1990's blue pick-up with New Hampshire registration.

Witness Francis Jerome, a neighbor of the victim, testified that he heard gunshots fired at approximately 9 p.m. on the night of the murder. Jerome also testified that he saw a small pick-up truck driving around on the victim's property. Jerome's description of the pick-up truck matched Briggs' pick-up truck.

The prosecution also demonstrated that Briggs had access to a gun. Robert White testified that he purchased a gun from William Lyonnais, which he described as "bigger than a .22" but "smaller than a 9 millimeter," and delivered the gun to Briggs. Briggs told White not to tell anyone about the gun. Robert Hathaway of the Rhode Island State Crime Laboratory concluded, from the shell casings and the projectiles found at the crime scene, that the murder weapon was a .38 caliber handgun, consistent to the gun sold to Briggs.

Testimony was presented demonstrating that, although Briggs told investigators he was in New Hampshire at the time of the murder, his cellular phone was used in Massachusetts at a time consistent with an automobile route from the victim's home to New Hampshire. Testimony also demonstrated that Briggs solicited two of his acquaintances in New Hampshire to provide him with an alibi for the night of the murder.

Briggs also told investigators that he learned of the victim's murder from the victim's son the day that it occurred. He told investigators that her son informed him that the victim was found at midnight. The victim's son testified that, on the day of the murder, he did not know any of the details of his mother's death. Nonetheless, Briggs informed another individual of the victim's murder, stating that the victim "went up to the barn at 9:30 p.m. and did not come back down." Other testimony established that the time of the murder was approximately 9:30 p.m. Briggs, however, claimed that his sole source of information about the murder was from the victim's son, someone who did not have such specific details.

The evidence at trial also demonstrated that Briggs telephoned and spoke with the victim from a payphone near the victim's home minutes before her death. Moreover, New Hampshire State Police seized vegetation and a pair of gloves from Briggs' pick-up truck. The vegetation found on the truck matched samples of vegetation from the murder scene. Tests on the gloves revealed the presence of gunshot residue. The State also presented testimony that demonstrated the financial relationship between Briggs and the victim, and testimony that demonstrated that a twist tie found in Briggs' truck matched twist ties found at the scene of the crime.

Finally, Timothy Ayers, an inmate at the Adult Correctional Institutions, testified that Briggs told him that he murdered the

victim. According to Ayers, Briggs said he owed the victim approximately $110,000 and that he "had to kill her because [Briggs] didn't have her money and she wanted it." State v. Briggs, 886 A.2d 735, 744 (R.I. 2005) ("Briggs III"). Ayers also testified to many details of the murder, such as how many shots were fired, where on the property the murder took place, and the fact that Briggs stopped to get gas after the murder.

The jury found Briggs guilty of first degree murder and the trial justice imposed the statutory life sentence.

D. Post-Verdict Proceedings

After the conviction, Briggs filed a motion for a new trial based upon newly discovered evidence, pertaining to Ayers, the jailhouse informant who testified against Briggs at trial. After trial, Ayers admitted to an investigator that he had given a statement to authorities concerning a separate criminal case that he now knew to be false. Briggs argued that the recantation of his earlier statement in that case amounted to newly discovered evidence that warranted a new trial. The defendant further argued that the State's failure to hand over the information that Briggs had requested concerning Ayers' involvement in that criminal case, as well as the State's failure to disclose three of Ayers' prior convictions, constituted discovery and constitutional violations. After conducting an evidentiary hearing, the trial justice denied the motion.

E. Appeal

Briggs appealed his conviction to the Rhode Island Supreme Court. See Briggs III, 886 A.2d 735. In his appeal, Briggs contended that (1) the trial justice curtailed his right to cross-examine various witnesses, in violation of the Sixth Amendment, (2) the trial justice made numerous errors in evidentiary rulings, (3) the trial justice wrongly dismissed a juror, (4) the State engaged in numerous discovery and Brady v. Maryland, 373 U.S. 83 (1963), violations, and (5) newly discovered evidence warranted a new trial. The State supreme court rejected his claims and affirmed his conviction. Briggs III, 886 A.2d at 735.

F. 28 U.S.C. § 2254 Petition

On December 5, 2006, Briggs filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and the State moved to dismiss the petition. Briggs thereafter secured counsel to represent him in this matter and counsel objected to the State's motion to dismiss, indicating therein that they sought to narrow the claims asserted in Briggs' *pro se* petition. Accordingly, this Court ordered Briggs' counsel to file an Amended Petition and directed the State to file a Response to the Amended Petition.

On July 11, 2007, counsel for Briggs filed an Amended Petition. In the Amended Petition, Briggs asserts:

(1) The state court unreasonably determined the facts, and the state court decision was contrary to, and, an unreasonable application of, Brady v. Maryland, because

(A) the State failed to disclose the "substance" of its relationship with Timothy Ayers; and

(B) the State failed to disclose three criminal offenses of Ayers prior to trial.

(2) The state court's decision was contrary to, and an unreasonable application of Brady v. Maryland, because the State failed to disclose the "dropping" of charges against Robert White and William Lyonnais;

(3) The state court's decision was contrary to, and an unreasonable application of, Sixth Amendment jurisprudence because the state court restricted cross-examination of witnesses Robert White and William Lyonnais; and

(4) The state court's decision was contrary to, and an unreasonable application of, the Fourteenth Amendment Due Process Clause because the prosecution failed to disclose that three of its witnesses would claim that a plastic twist-tie located on the seat of the defendant's truck matched twist-ties at the murder scene, and because all of the above mentioned errors denied Briggs' right to a fair trial.

## II. Analysis

### A. Section 2254 Standard

The appropriate standard for this Court to consider claims asserted in a state prisoner's Section 2254 petition is set forth in the Anti-terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). AEDPA significantly limits the scope of federal habeas review. AEDPA precludes the granting of habeas relief to a state prisoner unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is "contrary to" federal law if the state court applies a legal principle different from the governing principle set forth in Supreme Court cases, or if the state court decides the case differently from a Supreme Court case on materially indistinguishable facts. Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

To hold that a state court's decision is an "unreasonable application" of clearly established federal law, the federal habeas court must find that "the state court correctly identifie[d] the governing legal principle from [Supreme Court] decisions but unreasonably applie[d] it to the facts of the particular case." Bell, 535 U.S. at 694. In making this determination, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.

The Court should be mindful that in order to grant habeas relief, the state court decision must be objectively unreasonable as opposed to merely incorrect. Id. at 411 ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."). The Court's

focus "is not how well reasoned the state court decision is, but whether the outcome is reasonable." Hurtado v. Tucker, 245 F.3d 7, 20 (1st Cir. 2001), cert. denied, 534 U.S. 925 (2001).

Additionally, federal habeas relief can be provided on a claim adjudicated in the state courts if the adjudication of that claim was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). However, AEDPA provides that the federal habeas court shall presume that the state court's determination of factual issues is correct and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B. Preliminary Matters

Before reaching the claims asserted in Briggs' habeas corpus petition, the Court must address two motions filed by the Petitioner. First, Briggs seeks discovery pursuant to Rule 6 of the Rules Governing Habeas Corpus Proceedings. Second, Briggs seeks an evidentiary hearing. The Court will address these motions in turn.

1. Motion for Discovery

Briggs first seeks discovery in an effort to support his Brady claim wherein he alleges that the State failed to disclose the "substance" of its relationship with Ayers. The "substance" that Briggs complains about is the undisputed fact that Ayers provided

a statement to police in a separate matter, see State v. Fuller, No. W1/99-0311A, 2000 WL 1910079 (R.I. Super. Ct. Oct. 23, 2000) ("Fuller matter" or "Fuller case"), that was not disclosed to Briggs prior to his trial. Additionally, Briggs appears to assert that Ayers' three additional convictions not disclosed to Briggs prior to his trial are part of the "substance" of Ayers' relationship with the State.

In his request for discovery, Briggs seeks the production of all documents which relate to Ayers' involvement with the Rhode Island Attorney General, and the State, East Providence, and Pawtucket Police Departments. Additionally, Briggs seeks documents which contain any information relating to Ayers' convictions of six identified crimes, and any documents in the possession of six named investigators/prosecutors that relate to Ayers.

Rule 6(a) of the Rules Governing § 2254 Cases ("Rules") allows civil discovery to habeas corpus petitioners. It provides, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." See R. 6(a) R. Gov. 2254 Cases. Whether a petitioner has established good cause for discovery requires a habeas court to determine the essential elements of the petitioner's substantive claim and evaluate whether "specific allegations before the Court show reason to believe that the

petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908-909 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).

Moreover, a petitioner's request for discovery must be specific, as opposed to speculative or conclusory, see Williams v. Bagley, 380 F.3d 932, 976 (6th Cir. 2004), and the burden of demonstrating materiality of the information requested is on the moving party. Stanford v. Parker, 266 F.3d 442, 460 (6th Cir. 2001).

The allowance of discovery under Rule 6 must be considered in conjunction with 28 U.S.C. § 2254(e)(2), which restricts the court from considering evidence if the petitioner failed to develop the factual basis in state court. Under 2254(e)(2), "failed to develop" means a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. at 432. A prisoner is not at fault if he "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Id. at 435. If a prisoner's diligent efforts were thwarted by the prosecutor, state court, or otherwise, then the federal court may proceed to consider whether to hold an evidentiary hearing on a claim not considered by the state court, and likewise, good cause may exist to allow discovery under Rule 6.

Here, Briggs contends that the information he seeks will demonstrate that Ayers had a more significant relationship with the State than disclosed to him prior his trial. However, it is undisputed that three of Ayers' convictions and Ayers' statement in the Fuller matter were not disclosed to Briggs prior to trial. It is also undisputed that the state courts conducted a hearing on these matters post-trial where Briggs had the opportunity to develop the facts further, and did so. Good cause for discovery can not lie when the facts were already developed in the state proceedings and the Petitioner, making a federal collateral attack, seeks a second bite at the apple.

Moreover, Briggs' discovery requests are not specific. Rather, Briggs' discovery requests are broad and appear to be nothing more than a fishing expedition. "Rule 6 does not authorize fishing expeditions." Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000). Furthermore, permitting discovery on this claim would be fruitless since Briggs has not established, for the reasons set forth more fully below, a prima facie case that he is entitled to federal habeas relief on any of his claims.

Mindful that the "scope and extent of . . . discovery is a matter confided to the discretion of the District Court," Bracy, 520 U.S. at 909, that this forum is not a venue to re-try state cases, and that this Court can only grant habeas relief under

limited circumstances pursuant to the AEDPA, Briggs' motion for discovery is denied.

2. Motion for Hearing

Next, Briggs contends that he is entitled to an evidentiary hearing. However, "[f]ederal habeas is a collateral proceeding; particularly after AEDPA, it is not intended to provide a forum in which to retry state cases." Pike v. Guarino, 492 F.3d 61, 70 (1st Cir. 2007) (citing Bell v. Cone, 535 U.S. 685, 693 (2002)). "Consequently, in state prisoner habeas cases in which the applicant was afforded a full and fair hearing in state court, federal evidentiary hearings ought to be the exception, not the rule." Id.

When a federal court opts to hold an evidentiary hearing in a state habeas case, typically the purpose is to fill a gap in the record or to supplement the record on a specific point. Id. Here, Briggs offers no specific point on which he seeks an evidentiary hearing. Rather, his request for a hearing, like his request for discovery, is broad and open-ended, and can be denied on that basis alone. Indeed, Briggs' motion for a hearing does not identify which issues or claims he seeks a hearing on, or, what evidence he seeks to present that he claims will fill any gap in the record.

Notwithstanding Briggs' broad request, in order to determine whether to grant Briggs an evidentiary hearing, the Court must begin with 28 U.S.C. § 2254(e)(2), which provides,

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

If Briggs is subject to § 2254(e), he would not be entitled to an evidentiary hearing. There is sufficient evidence of guilt such that, even if he establishes all the allegations in his petition, a reasonable factfinder would have nevertheless found Briggs guilty.

Section 2254(e)(2), however, only applies to an applicant who "has failed to develop the factual basis of a claim in State court proceedings." Briggs has, in fact, developed the factual basis for his claims in state court. Since Briggs has not "failed" to develop his claim in state courts, this Court must make its determination on pre-AEDPA law governing evidentiary hearings. See e.g., Lopez v. Massachusetts, 349 F. Supp. 2d 109, 125 (D. Mass. 2004). Townsend v. Sain, 372 U.S. 293 (1963), as modified by

Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), provides the relevant standards. Under Townsend,

> [w]here the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.

Martineau v. Perrin, 601 F.2d 1201, 1207 (1st Cir. 1979). Townsend mandates a hearing

> [i]f (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

See 372 U.S. at 313. In all other cases, the holding of a hearing is in the discretion of the district judge. Id. at 318.

Here, despite Briggs' allegations to the contrary, the state court fully and fairly adjudicated his claims asserted in his habeas petition, and the state court resolved all of the factual issues relevant to the disposition of his claims. Moreover, as mentioned, Briggs fails to identify, in his motion for an evidentiary hearing, what precise factual dispute needs to be resolved. The Court will not guess as to the potential factual

dispute, particularly since a federal habeas court is not the venue to re-litigate issues that were, or could have been, presented to the state courts.

Simply put, Briggs' motion for an evidentiary hearing must be denied because he has failed to demonstrate that there is a genuine factual dispute that needs to be resolved by this Court. Moreover, there is no indication that the state courts did not adequately and fairly resolve all of the relevant factual issues. Merely because those issues were resolved against Briggs does not entitle him to a hearing in this federal habeas petition.

C. Briggs' Claims for Relief

Briggs essentially identifies three claims for relief in his habeas petition. Briggs makes claims under Brady, 373 U.S. 83, the Sixth Amendment, and the Fourteenth Amendment Due Process Clause. The Court will address these claims in turn.

1. Brady v. Maryland Claims

As his first basis for relief, Briggs asserts that the State committed Brady violations. See id. Specifically, Briggs contends that the State failed to "disclose the substance of its relationship" with Ayers. The "substance" to which Briggs' refers appears to be the fact that Ayers provided a statement to police in a separate criminal case. Second, Briggs claims that a number of Ayers' criminal offenses were disclosed post-trial. Third, Briggs

asserts that the State failed to disclose the "dropping" of charges against two witnesses, Robert White and William Lyonnais.

Under the AEDPA standard set forth above, Briggs is entitled to habeas relief only if the Rhode Island Supreme Court's ("RISC") resolution of his Brady claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

The settled law for this claim is, of course, Brady v. Maryland and its progeny; this line of cases requires the prosecution to disclose evidence under its control that is favorable to the accused. In Brady, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Since Brady, the Supreme Court has held that the duty to disclose such evidence is applicable even where there has been no request by the accused. United States v. Agurs, 427 U.S. 97, 107 (1976). In order to comply with Brady, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the

government's behalf in the case, including the police." Kyles v. Whitley, 514 U.S. 419, 437 (1995).

To establish a Brady violation, a defendant must demonstrate: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the Government suppressed the evidence; and (3) prejudice ensued from the suppression. Strickler v. Greene, 527 U.S. 263, 281-282 (1999). Only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," will the defendant have sufficiently demonstrated the prejudice component. Id. at 280; see also Kyles, 514 U.S. at 433-434.

The "term 'Brady violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence - that is, to any suppression of so-called 'Brady material' - although, strictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler, 527 U.S. at 281. Thus, the non-disclosure of Brady material deprives a defendant of a fair trial only where there is a reasonable probability that the Government's suppression affected the outcome of the case, United States v. Bagley, 473 U.S. 667, 682 (1985), or where the suppressed evidence "put[s] the whole case in such a different light as to undermine confidence in the verdict." Kyles, 514 U.S. at 435.

a. Ayers' Statement in the Fuller Matter

Briggs first contends that the State's failure to reveal that Ayers provided a statement in the Fuller case, a separate criminal prosecution, violated Brady.[3] The RISC, when examining this issue, found Briggs effectively and extensively cross-examined Ayers during the trial in "great detail about his attempts to cooperate with the state in exchange for favorable treatment," including the fact that Ayers wrote multiple letters to the Attorney General offering his cooperation. Briggs III, 886 A.2d at 758. Counsel for the defendant went as far as equating Ayers with "Judas." Id. The RISC found that Ayers' statement to police in this separate criminal trial was not "material" and that, in any event, the "jury would still have convicted the defendant" if this matter was brought to light in front of the jury. Accordingly, the RISC found that State's failure to disclose Ayers' statement in separate criminal case did not violate Brady.

Briggs first asserts that the RISC's factual determination regarding the "substance" of Ayers' "relationship" with the State

[3] The state superior court conducted an evidentiary hearing on this claim, finding that Briggs could not satisfy the "prejudice" component of Brady. Briggs II, 2003 WL 302325 at *7. To the extent that Briggs claimed that Ayers recanted the Fuller statement, the state court found that the alleged recantation occurred after Briggs' trial, and that, in any event, Ayers did not admit to making a false statement, but, rather, delivering one. In other words, Ayers delivered the statement to authorities, but the statement was itself fabricated by Fuller.

was unreasonable in light of the evidence presented. See 28 U.S.C. § 2254(d)(2). While Briggs attempted to establish a further relationship with the State during his post-conviction hearing, the "substance" presented to the state courts includes only the undisputed fact that Ayers provided a statement in the Fuller case that was not provided to Briggs prior to trial.[4] Since this fact is undisputed, the Court has difficulty assessing the precise basis of this claim. In any event, Briggs fails to present "clear and convincing evidence" to this Court to warrant a finding that the RISC made any "unreasonable" determinations of fact in light of the evidence presented with respect to this claim.

Next, Briggs asserts that the RISC decision on this claim is "contrary to" or an "unreasonable application" of Supreme Court

---

[4] At the state post-conviction evidentiary hearing, an investigator for the state public defenders' office testified that Ayers admitted to him that the statement he provided in the Fuller case was not his own. Rather, the investigator testified that Ayers allegedly admitted that he pieced together the statement based upon what other inmates told him and adopted it as his own. Ayers, however, testified at the hearing to the contrary, indicating that he received the statement directly from Fuller.

Briggs contends here that the state courts failed to resolve this factual dispute. Ayers' alleged actions in the Fuller case, whether true or false, are immaterial to the disposition of Briggs' habeas petition. No evidence was presented to the state courts which indicated that Ayers "cobbled" together the statement he made in Briggs' case. Indeed, Briggs testified that he received Briggs' jailhouse confession directly from Briggs and nothing was presented to the state courts to indicate otherwise.

Additionally, Briggs called Richard Brophy to testify at his post-conviction hearing. However, Mr. Brophy, then an inmate at the ACI, refused to testify, invoking his Fifth Amendment rights.

precedent. When reviewing this claim, the RISC considered the likely effect of the suppressed evidence (the statement in the Fuller case) and determined that its suppression was not sufficiently prejudicial, indicating that "the jury still would have convicted defendant." Briggs III, 886 A.2d at 758. This comports with Brady and its progeny. See Bagley, 473 U.S. at 682 (non-disclosure of Brady material deprives a defendant of a fair trial only where there is a reasonable probability that the Government's suppression affected the outcome of the case); Kyles, 514 U.S. at 435 (non-disclosure of Brady material only prejudicial where the suppressed evidence puts the whole case in such a different light as to undermine confidence in the verdict). Indeed, the State had a wealth of evidence connecting Briggs to the murder. Thus, RISC decision was not contrary to, or an unreasonable application of federal law.

b. Non-Disclosure of Three of Ayer's Convictions

Next, Briggs asserts that the State's failure to disclose three of Ayers' convictions prior to trial constitutes a Brady violation. The criminal background check conducted by the State and disclosed to the defendant documented thirty-four contacts between Ayers and law enforcement.[5] Following the trial, it was

[5] Briggs also complains about the belated disclosure of three other convictions. Apparently, three convictions were disclosed to Briggs after the trial commenced, but prior to Ayers' testimony. Thus, Briggs' counsel had an opportunity to cross-examine Ayers

discovered that three recent contacts were not disclosed to the Briggs.

The RISC, when deciding this claim, rejected Briggs' claim of a Brady violation finding that "if the high number of Ayers's criminal convictions was insufficient to convince a jury that it should disbelieve his testimony, then three additional convictions would not have changed the minds of the jurors." Briggs III, 886 A.2d at 757. The RISC found that the additional three convictions were cumulative and "would not have resulted in the defendant's acquittal." Briggs III, 886 A.2d at 758.

It is well established that "impeachment evidence that is merely cumulative . . . is insufficient to establish prejudice under Brady." Norton v. Spencer, 351 F.3d 1, 7 (1st Cir. 2003) (quoting United States v. Garcia-Torres, 341 F.3d 61 (1st Cir. 2003)). These three additional non-disclosed convictions would have merely added to the wealth of impeachment evidence that defense counsel had already amassed to destroy Ayers' believability. More importantly, the RISC decision on this claim

---

about these three other convictions during the trial. To the extent that Briggs maybe asserting that the belated disclosure violated Brady, there is no indication that Briggs' counsel sought a continuance to investigate these three other convictions and that the state court denied that motion. Moreover, this claim appears to be unexhausted. Nonetheless, Briggs has not demonstrated any prejudice under Brady. Norton v. Spencer, 351 F.3d 1, 7 (1st Cir. 2003) (impeachment evidence that is merely cumulative is insufficient to establish prejudice under Brady).

is not contrary to, nor an unreasonable application of, Supreme Court precedent. See id.

c. White and Lyonnais

Next, Briggs asserts that the State violated Brady because it failed to disclose the "dropping" of charges against two of its witnesses, Robert White and William Lyonnais. Both White and Lyonnais testified at trial that they supplied Briggs with a handgun prior to the murder.

Lyonnais told police in 1998 that he had marijuana charges pending in Massachusetts and the State failed to disclose this information prior to the commencement of Briggs' trial. However, Briggs was made aware of the marijuana charges prior to Lyonnais's testimony. Briggs' counsel thereafter inquired in his cross-examination, and Lyonnais testified that he did not receive favorable treatment from the Massachusetts authorities in exchange for his testimony in Briggs' case. Since Briggs was able to cross-examine Lyonnais on the pending charges, the RISC found no Brady violation because Briggs could not demonstrate prejudice. Briggs III, 886 A.2d at 756. This comports with Brady, since the non-disclosure of evidence only deprives a defendant of a fair trial where there is prejudice: a reasonable probability that the Government's suppression affected the outcome of the case, Bagley, 473 U.S. at 682, or where the suppressed evidence puts the whole case in such a different light as to undermine confidence in the

verdict. Kyles, 514 U.S. at 435. Briggs had the opportunity to cross-examine Lyonnais on the pending charges and did so.

With respect to White, Briggs also asserts that the State failed to disclose that it dropped charges against White in exchange for his testimony in Briggs' case. This claim is not supported by the record. Nothing was presented to the RISC which alleged that the State dropped charges against White in exchange for his testimony, and that this information was withheld from Briggs. Accordingly, this claim is summarily rejected.

2. Sixth Amendment Claims

Next, Briggs asserts that the state court restricted his right to cross-examine Robert White and William Lyonnais, in violation of the Confrontation Clause of the Sixth Amendment. The Confrontation Clause "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987). Here, the right at issue is the Petitioner's right to cross-examination. Of particular importance to this case, the Supreme Court has recognized that the exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986). When there is evidence of bias, a defendant has a constitutional right to cross-examine a

witness about the issue. Id. That right, however, is not without limitation.

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

Van Arsdall, 475 U.S. at 679.

In his direct appeal, Briggs claimed that he was prohibited from asking whether White was charged with perjury. Although the trial justice sustained an objection to the question during re-cross-examination, the trial justice permitted the line of questioning during White's cross-examination. Thus, the RISC found that the limitation of the re-cross-examination was proper because the matter had already been covered on cross-examination. The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Van Arsdall, 475 U.S. at 679.

With respect to Lyonnais, the RISC found that although the trial justice "temporarily prevented" the defendant from inquiring into possible drug charges, the trial justice amended her ruling and permitted cross-examination on this matter. The RISC found

that the amended ruling did not limit Briggs' right to cross examine Lyonnais. While Briggs claimed otherwise, the RISC found that "the record does not support defendant's version of events." Briggs III at 749 n.4. Indeed, the RISC found that "[t]he trial transcript . . . demonstrates to us that defendant was not precluded in any way from probing either White or Lyonnais on issues of their respective motives and biases." Briggs III, 886 A.2d at 748.

Since the state court's factual findings are presumed correct and nothing has been presented that demonstrates by clear and convincing evidence that Briggs was precluded in any way from probing White or Lyonnais, there is no factual basis for the instant habeas claim. See 28 U.S.C. § 2254(e)(1). Consequently, the RISC's decision on these claims was not contrary to, or an unreasonable application of federal law.

3. Denial of a Fair Trial

Next, Briggs asserts that he was denied a fair trial for two reasons. First, he claims that the State failed to disclose, prior to trial, that three of its witnesses would claim that a plastic twist tie located on the seat of defendant's truck matched a plastic twist tie found at the murder scene. Because the State failed to seize and inventory the twist tie seen in the interior of the defendant's pick-up truck, the State sought to link the defendant to the crime scene by proving that the twist ties were

found both at the crime scene and in the defendant's truck. Two state witnesses testified about its existence, and a photograph of the interior of the truck showed the twist tie, however, no twist tie was seized.

Defendant admitted before the RISC that he received a copy of the photograph which clearly revealed the twist tie. Defendant was also made aware that twist ties were discovered at the crime scene. The RISC found no constitutional violation since the "state handed over the very evidence that it used to prove the existence of the twist tie," noting that the State was not required to provide a detailed narration of the testimony of witnesses, and that Briggs' failure "to use the provided discovery for investigatory purposes" should not be rewarded with a dismissal. Briggs III, 886 A.2d at 756.

Indeed, there can be no constitutional violation when the material in question is not suppressed by the State. Briggs had in his possession prior to trial the very evidence he complains about. Thus, Briggs has failed to demonstrate that the RISC decision on this issue was contrary to, or an unreasonable application of, federal law.

Second, Briggs asserts that he was denied a fair trial based upon all of the above mentioned alleged errors set forth in the instant habeas petition. The RISC, rejecting this claim, found that "the trial justice did not commit a single prejudicial error,

and, many of the defendant's arguments are meritless." Again, nothing has been presented in this proceeding which demonstrates that the RISC decision on this issue, or any issue in the habeas petition, is contrary to, or an unreasonable application of, federal law, or that the RISC made an unreasonable determination of fact in light of the evidence presented.

III. Conclusion

For the reasons state above, Briggs' motion for discovery is denied, Briggs' motion for an evidentiary hearing is denied, the State's motion to dismiss is granted, and Briggs' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and dismissed.

SO ORDERED.

WESmith

William E. Smith
United States District Judge
Date: 1/17/08