IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHESTER BRIGGS | : | |
| | : | CA No. 06-528S |
| vs. | : | |
| | : | |
| A.T. WALL | : | |

**APPLICATION FOR CERTIFICATE OF APPEALABILITY OR, IN THE ALTERNATIVE, FOR RECONSIDERATION**

Petitioner hereby applies under 28 U.S.C. § 2253(c)(1)(A) and Local Rule 22.1 of the Local Rules of the First Circuit for certificate of appealability for the following questions:

1. Whether the Supreme Court of Rhode Island (RISC) took a position clearly contrary to established Supreme Court law when it premised its decision on a legal standard of materiality predicated on what the state prosecutor knew at the time of the non-disclosure?

2. Whether the RISC took a position clearly contrary to established Supreme Court law when it predicated its materiality finding by a standard which emphasized the likelihood of a different verdict?

3. Whether this Court endorsed state court decisions which unreasonably determine the facts in that they first barred questioning into the overall relationship between Timothy Ayers and the State of Rhode Island and then failed to assess whether the new evidence undermined confidence in the verdict in that it tended to show that Timothy Ayers was a long-time state police informant who was rewarded for his information and assistance by multiple non-jail resolutions of an ongoing sequence of criminal acts?

4. Whether, in light of this new information, this Court erred in refusing to allow discovery and/or to hold a hearing into the relationship between Timothy Ayers and the State of Rhode Island.

Petitioner states his reasons in the accompanying Memorandum of law and in *Petitioner's Memorandum in Support of Objection to State of Rhode Island's Motion to Dismiss,* already on file with this Court.

In the alternative, petitioner requests this Court to reconsider its decision and judgment dismissing his petition for writ of habeas corpus.

Respectfully submitted,
Chester Briggs
By his attorneys,

/s/ John A. MacFadyen
JOHN A. MACFADYEN (#1209)
C. LEONARD O'BRIEN (#1886)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
401-751-5090

**CERTIFICATION**

I hereby certify that on the 28th day of February, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney(s) of record:

Jane M. McSoley
Assistant Attorney General
150 South Main Street
Providence, RI 02903
jmcsoley@riag.ri.gov

/s/ John A. MacFadyen

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHESTER BRIGGS | : | |
| | : | CA No. 06-528S |
| vs. | : | |
| | : | |
| A.T. WALL | : | |

**MEMORANDUM IN SUPPORT OF APPLICATION FOR CERTIFICATE OF APPEALABILITY OR, IN THE ALTERNATIVE, FOR RECONSIDERATION**

## I. INTRODUCTION

On January 18, 2008, this Court filed a memorandum and order, followed by a judgment, denying Mr. Briggs's petition for a writ of habeas corpus and refusing to allow discovery or an evidentiary hearing. Petitioner filed a timely notice of appeal from these rulings. He now has moved for a Certificate of Appealability under 28 U.S.C. § 2253(c)(1)(A) and Local Rule 22.1 of the Local Rules of the First Circuit to allow him to prosecute this matter further.

These provisions require that, as a predicate for taking an appeal to the First Circuit from a denial of a petition filed under 28 U.S.C. § 2254, the petitioner must first apply to this Court for a certificate acknowledging that s/he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(B)(3). The Supreme Court has described this requirement as a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000), quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 (1983).

Petitioner submits he meets the requirement on the following four points:

1. The Supreme Court of Rhode Island (RISC) took a position clearly contrary to established Supreme Court law when it premised its decision on a legal standard of materiality predicated on what the state prosecutor knew at the time of the non-disclosure.

2. The RISC took a position clearly contrary to established Supreme Court law when it predicated its materiality finding on a standard which emphasized the likelihood of a different verdict.

3. This Court endorsed state court decisions which unreasonably determined the facts when they first barred questioning into the overall relationship between Timothy Ayers and the State of Rhode Island and then failed to assess whether the new evidence undermined confidence in the verdict by showing that Timothy Ayers was a long-time state police informant who was rewarded for his information and assistance by multiple non-jail resolutions of an ongoing sequence of criminal acts.

4. In light of this new information, this Court erred in refusing to allow discovery and/or to hold a hearing into the full relationship between Timothy Ayers and the State of Rhode Island, which has yet to be disclosed.

## II. <u>SUBSTANTIAL SHOWING</u>

### A. <u>Decision Contrary to Established Supreme Court Law</u>

This Court concluded that the "RISC decision was not contrary to, or an unreasonable application of federal law." *Memorandum and Order (M & O)* at p. 23. A reasonable jurist could disagree with this conclusion in light of the fact that both the Superior Court and the RISC applied a legal standard for the non-disclosure of exculpatory evidence which is substantially at odds with the requirements of *Kyles v. Whitley,* 514 U.S. 419 (1995). Instead of assessing whether, from a post-trial vantage, the non-disclosure undermined confidence in the verdict, the state courts premised their decision on whether the information was of an obviously exculpatory character to the prosecutors at the time of the non-disclosure. *State v. Briggs,* 886 A.2d 735, 758 (R.I. 2005) (*Briggs III*); *State v. Briggs,* 2003 R.I. Super.LEXIS 12, *15, 18 (*Briggs II*).

This is a fault-based standard which was explicitly rejected in *Kyles, supra* at 433-434. Effectively, it announces a new rule of federal constitutional law at odds with an established Supreme Court jurisprudence.

In addition to using a fault-based approach to the non-disclosure of exculpatory evidence, the RISC used a bottom-line materiality standard which focused exclusively on the question of whether "the jury still would have convicted the defendant," even with the new information. *Briggs III, supra* at 758. This "different verdict" standard was rejected by *Kyles,* where the Supreme Court observed that the question is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles, supra* at 434.

Hence, on this point as well, the state court decision was contrary to clearly established Supreme Court law.

B. <u>Unreasonable Application of Federal Law</u>

This Court endorsed the state courts' conclusions as a reasonable application of federal law. *M & O* at 22-25. The state courts, however, affirmatively refused to permit inquiry into the full relationship between Ayers and the state and then, having limited the inquiry, overlooked and misconceived the exculpatory information before them.

Petitioner presented the state courts with two types of exculpatory information which had not been disclosed in timely fashion: six additional criminal cases against the state's star witness and his delivery of a second jailhouse confession to the same Assistant Attorney General who was prosecuting petitioner. The true significance of this evidence was not its intrinsic impeachment value, but what it suggested about the overall relationship between Ayers and the state. Petitioner did not need additional convictions to impugn the credibility of a career criminal under R.I. Evid. 609. Nor was the key point of the second jailhouse confession the fact that a

credible witness (ignored by the state courts) testified that Ayers admitted it was second-hand, and hence, one could infer that Ayers did the same thing with petitioner. Instead, the real significance of this information is that Ayers is a professional police informant, in the business of generating evidence, who is paid for his information and assistance by the state's willingness to turn a blind eye to his commission of repeated felonies. This relationship is an independent and substantial basis for disbelieving his tale of cellblock confidences. Further, depending on the full scope of Ayers's relationship with the state police, his jailhouse inquiries (if they occurred) may have violated petitioner's right to counsel, requiring suppression of petitioner's alleged admissions. *See Massiah v. United States,* 377 U.S. 201 (1964).

In a recent habeas case, the Supreme Court found *Brady* error where a state prosecutor did not disclose his informant witness's "true role in the investigation and trial of the case." *Banks v. Dretke,* 540 U.S. 668, 702 (2004). The Court rejected the state's claim that sufficient information had been published to alert the petitioner to the full scope of the relationship between the witness and the police. To the contrary, the court stated "[o]ur decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Id.* at 695.

The state has refused to disclose Ayers's relationship to the state police. Consequently, petitioner can only present that circumstantial evidence which he has been able to obtain to date. In post-verdict proceedings, the state courts learned of six undisclosed convictions for felonies which went effectively unpunished. They learned that Ayers had manufactured a jailhouse confession in another case, one where a credible witness heard him admit that it was cobbled together from hearsay. Notwithstanding this new information, the state continued to defend against petitioner's new trial motion on the ground that Ayers had testified that his contact with

state prosecutors was limited to the 1997 negotiation of his Cooperation Agreement. *App.* W:28. They did so even though petitioner has now found court documents which show that one of these prosecutors appeared on a motion to reduce in one of the undisclosed cases to secure a non-jail resolution for Mr. Ayers. Court documents attached as *App.* FF.

When defendant sought to inquire directly about Ayers's activities as a professional witness, the state court sustained the prosecutor's objections. *App.* W:14-17. In particular, the state blocked further inquiry into Ayers's relationship with Detective A'Vant, even after the admission that Ayers may have met with him as many as five times over the years and he may have helped obtain favorable treatment. *App.* W:32, 38, 42-43. The basis for the objection was the invocation of the "informant privilege." *Id.* at 43. This very ground was summarily rejected by the Supreme Court in *Banks*: "Nothing in *Roviaro* or any other decision of this Court, suggests that the state can examine an informant at trial, withholding acknowledgement of his informant status in the hope that defendant will not catch on, so will make no disclosure motion." *Banks, supra* at 698.

The new evidence strongly suggests that Ayers was a professional informant, not just a small-time criminal who received jailhouse confidences and bargained for a one-time deal. Petitioner's jury should have been informed of this when it was asked to assess his credibility. "After all, a history of cooperation with the government would tend to impeach the credibility of a government witness." *United States v. Cole,* 707 F.Supp. 999, 1003 (N.D. Ill. 1989). But the real nature of Ayers's relationship to the state was never disclosed although it was necessarily in the state's possession.

A reasonable jurist could conclude that the state courts' decisions were based on an unreasonable determination of the facts.

D. Request for Discovery and Hearing

Petitioner requested this Court to permit discovery into the state's relationship with Ayers as a prelude to an evidentiary hearing. This Court refused this request on the grounds that the facts were already developed in the state court and the discovery request was inadequately specific. *M & O* at 11-18.

Petitioner respectfully disagrees. His initial discovery request, a demand for documents, was both detailed and limited to the files of specified police departments and particular police officers regarding Timothy Ayers. *Exhibit* A to *Petitioner's Initial Motion For Discovery*.

As for the alleged development of the facts, that is exactly what did not happen in the state court proceedings. Full inquiry was barred. Instead, petitioner was left with "hints" of the true nature of the Ayers/state relationship, *Banks, supra* at 695, albeit very strong ones. But the key facts were hidden from him: that Ayers had an ongoing interaction with the state police, multiple meetings with Detective A'Vant in particular, and a relationship with state authorities, such that he could offend and re-offend without sanction. This information casts a whole new light on the quality of his testimony. It could lead to a basis for suppressing the confession altogether, if that relationship was in place at the point Ayers allegedly had the incriminating conversation with petitioner. *See Massiah, supra*.

In these circumstances, a reasonable jurist could conclude that it was error not to permit discovery and afford petitioner an evidentiary hearing.

## III. CONCLUSION

Petitioner asks that this Court issue the requested Certificate of Appealability. In the alternative, petitioner requests this Court reconsider its judgment dismissing his petition for writ of habeas corpus.

Respectfully submitted,
Chester Briggs
By his attorneys,

/s/ John A. MacFadyen

JOHN A. MACFADYEN (#1209)
C. LEONARD O'BRIEN (#1886)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
401-751-5090

**CERTIFICATION**

I hereby certify that on the 28th day of February, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney(s) of record:

Jane M. McSoley
Assistant Attorney General
150 South Main Street
Providence, RI 02903
jmcsoley@riag.ri.gov

/s/ John A. MacFadyen