**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CHESTER BRIGGS** | : | |
| | : | |
| **v.** | : | **CA: 06-528S** |
| | : | |
| **A.T. WALL** | : | |

**STATE'S OBJECTION TO PETITIONER'S APPLICATION FOR CERTIFICATE OF APPEALABILITY OR, IN THE ALTERNATIVE, FOR RECONSIDERATION**

In an order issued on January 17, 2008, United States District Judge William E. Smith denied petitioner Chester Briggs's motions for discovery and for an evidentiary hearing and granted the State/designated party respondent's motion to dismiss Briggs's petition for writ of habeas corpus. Pursuant to 28 U.S.C. § 2253(c)(1)(A) and Local Rule 22.1 of the Local Rules of the First Circuit, Briggs has filed an Application For Certificate of Appealability or, in the Alternative, for Reconsideration. For the reasons set forth in the attached memorandum, the State objects to the petitioner's application and respectfully requests that it be denied in all respects, leaving the United States District Judge's Order undisturbed.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By Its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Jane M. McSoley

**JANE M. McSOLEY, #3136**
Department of Attorney General
150 South Main Street
Providence, RI 02903
401) 274-4400

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on the 3rd day of March, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney(s) of record on the same date:

C. Leonard O'Brien Jr., Esquire
len@ridefense.com

John A. MacFadyen III, Esquire
jam@ridefense.com

/s/ Jane M. McSoley

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CHESTER BRIGGS** | : | |
| | : | |
| **vi.** | : | **CA: 06-528S** |
| | : | |
| **A.T. WALL** | : | |

**MEMORANDUM IN SUPPORT OF STATE'S OBJECTION TO PETITIONER'S APPLICATION FOR CERTIFICATE OF APPEALABILITY, OR, IN THE ALTERNATIVE, FOR RECONSIDERATION**

In a Memorandum and Order issued on January 17, 2008, United States District Judge William E. Smith denied petitioner Chester Briggs's motion for discovery along with his motion for an evidentiary hearing and granted the State's motion to dismiss Briggs's petition for habeas corpus brought pursuant to 28 U.S.C. § 2254. Briggs has responded with the submission of an Application for Certificate of Appealability or, in the Alternative, for Reconsideration [hereinafter, "Application"] and an accompanying Memorandum in Support of Application for Certificate of Appealability or, in the Alternative, For Reconsideration pursuant to 28 U.S.C. § 2253 (c)(1)(A) and Local Rule 22.1 of the Local Rules of the First Circuit. Briggs's application for a certificate of appealability [COA] is based upon the following four questions:

> 1. Whether the Supreme Court of Rhode Island (RISC) took a position clearly contrary to established Supreme Court law when it premised its decision on a legal standard of materiality predicated on what the state prosecutor knew at the time of the non-disclosure?
>
> 2. Whether the RISC took a position clearly contrary to established Supreme Court law when it predicated its materiality finding by a standard which emphasized the likelihood of a different verdict?
>
> 3. Whether this Court endorsed state court decisions which unreasonably determine the facts in that they first barred questioning

> into the overall relationship between Timothy Ayers and the State of Rhode Island and then failed to assess whether the new evidence undermined confidence in the verdict in that it tended to show that Timothy Ayers was a long-time state police informant who was rewarded for his information and assistance by multiple non-jail resolutions of an ongoing sequence of criminal acts?
>
> 4. Whether, in light of this new information, this Court erred in refusing to allow discovery and/or to hold a hearing into the relationship between Timothy Ayers and the State of Rhode Island.

Application, p. 1.

The designated party/respondent, the State of Rhode Island objects to petitioner's application for a certificate of appealability and/or reconsideration and files this memorandum in support of said objection.

**Applicable Standard**

Under the provisions of 28 U.S.C. § 2253 (c), the Antiterrorism and Effective Death Penalty Act of 1996, a state prisoner seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254 has no automatic right to appeal the District Court's denial or dismissal of his petition. Instead, he must seek and obtain a certificate of appealability. This requires him to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S.Ct. 1029, 1034 (2003). When, as in this case, the District Court rejects petitioner's constitutional claims on the merits, a petitioner can show that he is entitled to a COA only by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604 (2000).

The State submits that Chester Briggs does not meet this requirement, and thus, is not entitled to a COA or to reconsideration of the judgment rendered by District Judge Smith. This Court properly denied Briggs's petition in accordance with federal law because petitioner failed to demonstrate that the Rhode Island Supreme Court's rejection of his direct appeal of his murder conviction was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850 (2002); State v. Briggs, 886 A.2d 735 (R.I. 2005) [Briggs III]. Thus, this Court's ruling, as set forth in its Memorandum and Order, is insulated from disturbance on review.

None of the four questions raised by Briggs in this application raises any viable grounds for review. They center on nothing more than the utterly unfounded allegations Briggs attempts to raise around the specter of Timothy Ayers. The decisions rendered by the Rhode Island Supreme Court in Briggs III, and more recently by this Court in its Memorandum and Order, exposed the emptiness of these allegations.

In his request for appellate review, the petitioner avers that the Rhode Island Supreme Court incorrectly premised its decision concerning the impact of Ayers's testimony on a legal standard of materiality, and "on what the prosecutor knew," in contravention of established Supreme Court law. This patently erroneous suggestion is puzzling in light of established federal habeas corpus law, particularly that handed down since the passage of the AEDPA. As this Court noted in its decision, the United States Supreme Court has held that in order to establish a Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963) violation for habeas corpus purposes, the petitioner must establish that

"the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler v. Greene, 527 U.S. 263, 282, 119 S.Ct. at 1948 (1999). The nondisclosure deprives defendant of a fair trial only when there is a reasonable probability that it affected the outcome of the case, United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985) or "where the suppressed evidence 'put[s] the whole case in such a different light as to undermine confidence in the verdict.'" Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 1566 (1999); Memorandum and Order, 20. As this Court noted, the Rhode Island Supreme Court subjected the Ayers's statement in the Fuller case to this test and determined that "the jury still would have convicted the defendant" in light of the weight of incriminating evidence elicited at trial.[1] Memorandum and Order, 23 quoting Briggs III at 758. Clearly, this Court was correct in finding that the Rhode Island Supreme Court's assessment of the evidence was not contrary to or an unreasonable application of clearly established federal law.

The same rationale applies to the three unintentionally nondisclosed convictions out of Ayers's thirty-seven total convictions. This Court noted that for federal habeas purposes, the nondisclosure of "impeachment evidence that is merely cumulative" does not establish prejudice under Brady. Norton v. Spencer, 351 F.3d 1, 7 (1st Cir. 2003). The Rhode Island Supreme Court's conclusion that "if the high number of Ayers's criminal convictions was insufficient to convince the jury that it should disbelieve his testimony, then three additional convictions would not have changed the minds of the

[1] The petitioner's attempts to recharacterize the evidence notwithstanding, this Court captured the true essence of Ayers's role in the Fuller matter, that is, he "did not admit to making a false statement, but, rather, delivering one." Memorandum and Order, 21, n. 3.

jurors" was not contrary to, nor an unreasonable application of, federal law. Memorandum and Order, 24-25 quoting Briggs III, at 758.

Briggs's additional suggestion that he was precluded from bringing to light "the overall relationship between Timothy Ayers and the State of Rhode Island" is not at all an accurate representation. As this Court noted, the petitioner knew about this relationship at the time of trial; more importantly, the jury **did** learn that Ayers was a "long-time state police informant," and "Briggs effectively and extensively cross-examined Ayers during the trial in 'great detail about his attempts to cooperate with the state in exchange for favorable treatment, including the fact that Ayers wrote multiple letters to the Attorney General offering his cooperation.'" Indeed, as this Court observed further, defense counsel went so far as equating Ayers with Judas Iscariot. Memorandum and Order, 21 quoting Briggs III at 758.

As this Court observed, a posttrial hearing was held on the Ayers matter; at the hearing the petitioner was unable to produce any new evidence about the "overall relationship" between Ayers and the prosecution, but simply attempted to cast Ayers's admittedly self-serving, but unwitting, delivery of false information in a more sinister light. Contrary to his assertions, Briggs was given every opportunity to make his case in state court; his failure was not due to the Rhode Island Supreme Court's unreasonable determinations of fact or misapplication of federal law, but because he lacked any evidence to support his specious claims.

The petitioner cites the Supreme Court's 2004 decision in Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256 (2004) to support his claim that he suffered prejudice under Brady warranting habeas relief. The petitioner in Banks successfully made such a

showing to the United States Supreme Court on the basis of the state's failure to disclose to the defense the close relationship between two key prosecution witnesses and the police during his murder trial and the subsequent sentencing procedures. While Briggs certainly recites the black-letter law of the Banks holding correctly, even a cursory reading of that case reveals the multitude of factual disparities between that case and the one under consideration here.

The murder weapon presented in evidence at Banks's murder trial was found in the residence of an individual named Charles Cook. Cook testified that Banks arrived there one night and confessed to "having killed the white boy for the hell of it." 540 U.S. at 676-77, 124 S.Ct. at 1264. The trial testimony of other witness at issue in the habeas proceedings, Robert Farr, also implicated Banks in the crime. Both men lied about their relationship with police at trial, with Cook telling the jury he never discussed his testimony with anyone and Farr denying that he ever took money from police in exchange for his cooperation. *Id.*

The prosecution never disclosed any contrary information throughout the entire course of state proceedings, including the appeal and postconviction hearings. 540 U.S. at 676-78, 693, 124 S.Ct. 1264-65, 1274-75. It was not until the commencement of federal proceedings that the motives underlying the respective motivations of Cook and Farr came to light. Cook revealed that he was coached extensively about his anticipated trial testimony by police and prosecutors, who threatened him with imprisonment if he failed to cooperate, while Farr admitted that he was a paid informant who cooperated with police in setting up the defendant's arrest. 540 U.S. at 677-78, 124 S.Ct. at 1264-65.

In concluding that the defendant had demonstrated a violation of Brady by the prosecution, the Supreme Court focused on several factors that are inapposite to Briggs's case. The most obvious, of course, is that Banks's complaint focused on two witnesses who played key roles in Banks's case, unlike Briggs, whose allegations are based on Ayers's involvement in a ***separate, totally unrelated*** case. 540 U.S. at 694-698, 124 S.Ct. at 1274-75.

Also of significance is the information possessed by the defense in the two cases. Unlike counsel for Banks, Briggs's defense team knew that Ayers was a known prison informant, and unlike Farr or Cook, Ayers was subjected to extensive and grueling cross-examination about his willingness to barter information about his fellow inmates in exchange for favorable treatment. Moreover, Briggs, unlike Banks, was given every opportunity to explore and expand upon the relationship between the State and Timothy Ayers and the role of that alliance in his case at state postconviction proceedings, and, as this Court noted, he was unable to produce a shred of evidence with any bearing on his conviction.

Continuing with its Strickler analysis, the Supreme Court determined that the evidence in question was material to the Banks verdict because Farr had instigated, at the request of police, the defendant's procurement of a gun, evidence that formed "the centerpiece of the prosecution's penalty phase case." 540 U.S. at 700-01, 124 S.Ct. at 1278. And while Farr was impeached at trial, he was not impeached concerning his role in the petitioner's trial, making it impossible to conclude with any certainty that a "reasonable probability of a different result" did not exist had the suppressed information been disclosed to the defense. 540 U.S. at 702-03, 124 S.Ct. at 1278-79.

Once again, the discrepancies between the facts of Banks and those of Briggs's case are marked. Unlike Farr or Cook, Timothy Ayers played no part in the events surrounding the killing of Patricia Jacques, the investigation of that murder, or Briggs's subsequent arrest; he was merely a bystander at the ACI who kept his ears open for information that he could trade in for the opportunity to better his own situation. And unlike the police officers in Banks, who actively elicited the information that led to that defendant's conviction and subsequent death penalty, authorities had no role in eliciting Briggs's admission about his involvement in the murder of Patricia Jacques; the defendant spoke to Ayers entirely of his own volition. Moreover, Ayers was grilled about his relationship with Briggs at the prison and the petitioner's admission concerning his role in the murder.

As a final point, Briggs's request for discovery is empty of any specificity, nothing more, as this Court observed, than the type of "fishing expedition" proscribed by Rule 6. Memorandum and Order, 14. It is based on nothing more that the suggestion that Ayers's relationship with the State was of broader significance than that elicited at trial. Application, 8. But as this Court observed, Rule 6 must be considered in conjunction with 28 U.S.C. § 2254 (e) (2), "which restricts the court from considering evidence if the petitioner failed to develop the factual basis in state court." Memorandum and Order, 13. As this Court accurately noted, Briggs was given every opportunity to demonstrate the allegedly nefarious relationship between Ayers and the State during his state postconviction hearing. However, the only information that Briggs was able to establish at that hearing was Ayers's ***undisputed*** role in the Fuller case and while it is equally

undisputed that this information was not disclosed to the defense prior to trial, it is completely unrelated and immaterial to Briggs's case. Memorandum and Order, 22, n. 4.

Equally unavailing is Briggs's request for an evidentiary hearing, which, again, is founded on nothing more than baseless allegations and open-ended speculation. The petitioner did, as this Court's decision noted, fully develop his claims in state court, and the state courts dully and fairly resolved the issues relevant to his case in a manner consistent with federal constitutional guarantees.

Chester Briggs has had his day in state court. Despite the overwhelming amount of evidence pointing to his guilt, he is unhappy with the verdict, and now attempts, via empty allegations and baseless speculation, to retry his case in federal court with hopes of a more favorable result. This is an alternative, however, clearly proscribed by law. Federal law is clear: habeas is a collateral proceeding; "it is not intended to provide a forum in which to retry state cases." Pike v. Guarino, 492 F.3d 61, 70 (1st Cir. 2007). The petitioner has made no viable showing that he was denied any right of constitutional dimension, nor has he demonstrated that this Court's assessment of his constitutional claims were debatable or wrong. Slack v. McDaniel, 529 U.S. at 484, 120 S.Ct. at 1604. Thus, he should be denied a Certificate of Appealability and/or reconsideration of the merits of his petition.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By Its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Jane M. McSoley

**JANE M. McSOLEY, #3136**
Department of Attorney General
150 South Main Street
Providence, RI 02903
401) 274-4400

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on the 3rd day of March, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. Service was accomplished by transmission of the Notice of Electronic Filing generated by the ECF system to the following attorney(s) of record on the same date:

C. Leonard O'Brien Jr., Esquire
len@ridefense.com

John A. MacFadyen III, Esquire
jam@ridefense.com

/s/ Jane M. McSoley