UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHESTER R. BRIGGS, Petitioner, | ) | |
| v. | ) | C.A. No. 06-528 S |
| A. T. WALL, Director, Rhode Island Department of Corrections, Respondent. | ) | |

**Memorandum and Order**

William E. Smith, United States District Judge.

Chester R. Briggs ("Briggs" or "Petitioner") has filed an Application for Certificate of Appealability Or, in the Alternative, for Reconsideration in the above matter. He seeks to appeal, or to obtain the reconsideration of, this Court's dismissal of his petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction of first-degree murder. The Attorney General of the State of Rhode Island filed an objection to that Motion on behalf of A.T. Wall, Director of the Rhode Island Department of Corrections, the party-Respondent to the original habeas petition (collectively, the "State").

For the reasons set forth below, this Court denies Briggs's application and his request for reconsideration.

I. <u>Background</u>

A full description of the facts of the underlying offense and the travel of the case in state court may be found in the state

court decisions pertinent to this matter[1] and in this Court's memorandum and order denying Briggs's habeas petition. See Briggs v. Wall, C.A. No. 06-528-S, 2008 WL 185647 (Jan. 18, 2008) ("Briggs IV"). For present purposes, the Court will recite only the facts pertinent to the instant application.

Briggs was convicted, after a jury trial in Rhode Island Superior Court, of the first-degree murder of Patricia Jacques and was sentenced to mandatory life imprisonment. At trial one of the State's witnesses was Timothy Ayers, who testified that Briggs, while incarcerated and awaiting trial, told him that he murdered the victim because he owed her money and couldn't repay it. Ayers provided a number of details concerning the murder, such as how many shots were fired, where on the property the murder took place, and the fact that Briggs stopped to get gas after the murder.

Briggs filed a motion for a new trial, claiming that Ayers had admitted to an investigator, after Briggs's trial, that a previous statement he had given to authorities inculpating another inmate, Charles Fuller, in a separate, unrelated case (the "Fuller statement") had turned out to be false and that this admission amounted to newly discovered evidence warranting a new trial. He further argued that the State's failure to disclose pretrial the

[1] See State v. Briggs, 756 A.2d 731 (R.I. 2000) ("Briggs I"), State v. Briggs, Dkt. No. N1/97-0276A, 2003 WL 302325 (R.I. Super. Jan. 16, 2003) ("Briggs II"), and State v. Briggs, 886 A.2d 735 (R.I. 2005) ("Briggs III").

information concerning Ayers's involvement in Fuller's criminal case, as well as three of Ayers's prior convictions, constituted discovery and constitutional violations. After conducting an evidentiary hearing, the state trial justice denied the motion. Her memorandum and order relied on Kyles v Whitley, 514 U.S. 419 (1995), and concluded that "the previously undisclosed evidence does not put the present case in such a different light as to undermine confidence in the jury's verdict." State v. Briggs, Dkt. No. N1/97-0276A, 2003 WL 302325 at *7 (R.I. Super. Jan. 16, 2003) ("Briggs II").

Briggs's conviction was affirmed by the Rhode Island Supreme Court (RISC). See State v. Briggs, 886 A.2d 735 (R.I. 2005) ("Briggs III"). The RISC found *inter alia* that the State's nondisclosure of Ayers's Fuller statement and his additional prior convictions did not constitute discovery or constitutional violations and upheld the trial justice's ruling denying Briggs's motion for new trial. Id. at 757-58.

Briggs thereafter filed in this Court a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After securing counsel, he filed an Amended Petition. In his Amended Petition, Briggs asserted *inter alia* that the RISC decision affirming his conviction unreasonably determined the facts, and was contrary to and/or an unreasonable application of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, in rejecting his claims that the State

failed to disclose prior to trial (1) the "substance" of its relationship with Ayers, and (2) three previous criminal offenses of Ayers.[2]

This Court denied relief as to all of Briggs's habeas claims. The Court found (1) that Briggs had failed to show that the state courts made any unreasonable determinations of fact regarding the substance of Ayers's "relationship" with the State, and (2) that the state court's failure to resolve any issues of fact concerning the source or inception of that statement was immaterial to Briggs's case. Briggs IV, 2008 WL 185647 at *9. The Court noted the state court's finding that the falsity of the Fuller statement was discovered by prosecutors only after the Briggs trial and that the falsity was caused not by Ayers but by Fuller. Id.

This Court also found that the RISC decision finding no Brady violation in connection with the State's nondisclosure of Ayers's Fuller statement was not "contrary to" or an "unreasonable application" of clearly established Federal law. This Court noted that in reviewing this claim, the RISC considered the likely effect of the suppressed evidence and determined that its nondisclosure

[2] Other claims advanced by Briggs in his habeas petition challenged the RISC decision's rejection of (1) his claims that the State failed to disclose the dismissal of pending charges against two other State witnesses, (2) that his cross-examination of those witnesses was improperly restricted, and (3) that the State's failure to disclose that it would present testimony linking certain physical evidence found in Briggs' truck to the murder scene, along with the above-mentioned errors, deprived him of a fair trial. None of these claims are at issue here.

was not prejudicial because "the jury still would have convicted defendant," id. at *10 (quoting Briggs III, 886 A.2d at 758), and further noted that the State had a wealth of evidence connecting Briggs to the murder, apart from the Fuller statement. Id.

As to Briggs' claim that the State's failure to disclose prior to trial three of Ayers's previous criminal offenses (and its belated disclosure of three other prior convictions) violated Brady, this Court concluded that the RISC decision rejecting this claim was neither contrary to nor an unreasonable application of U.S. Supreme Court precedent, in view of the principle that "impeachment evidence that is merely cumulative . . . is insufficient to establish prejudice under Brady." Id. at *10 and n.5 (quoting Norton v. Spencer, 351 F.3d 1, 7 (1st Cir. 2003)).[3]

In the instant Application Briggs presents the following issues:

1. Whether the Supreme Court of Rhode Island (RISC) took a position clearly contrary to established Supreme Court law when it premised its decision on a legal standard of materiality predicated on what the state prosecutor knew at the time of the nondisclosure.

---

[3] This Court also denied Briggs's requests for leave to conduct discovery and for an evidentiary hearing on his petition. As to his discovery request, this Court found that Ayers's relationship with law enforcement had been extensively examined in the state court post-trial hearing and that the discovery requests themselves were not specific. Briggs IV, 2008 WL 185647 at *6. With respect to the need for a hearing, this Court concluded that Briggs had been able to develop the factual basis for his claims in state court and had failed to demonstrate the existence of a genuine factual dispute warranting a hearing in this Court. Id. at *7-8.

2. Whether the RISC took a position clearly contrary to established Supreme Court law when it predicated its materiality finding by a standard which emphasized the likelihood of a different verdict.

3. Whether this Court endorsed state court decisions which unreasonably determined the facts in that they first barred questioning into the overall relationship between Timothy Ayers and the State of Rhode Island and then failed to assess whether the new evidence undermined confidence in the verdict in that it tended to show that Timothy Ayers was a long-time state police informant who was rewarded for his information and assistance by multiple non-jail resolutions of an ongoing sequence of criminal acts.

4. Whether, in light of this new information, this Court erred in refusing to allow discovery and/or to hold a hearing into the relationship between Timothy Ayers and the State of Rhode Island.

The State filed an opposition to the Application, and this Court held a hearing on April 2, 2008 and thereafter took the matter under advisement.

## II. Discussion

### A. Request for COA

Section 2253(c)(1)(A) and Local Rule 22.1 require that, as a predicate for taking an appeal to the First Circuit from a denial of a petition filed under 28 U.S.C. § 2254, a petitioner must first apply for a certificate acknowledging that he or she "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has described this requirement as a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented

were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). See also Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (same).

1. Contrary to Federal Law

Briggs first claims that reasonable jurists could disagree with this Court's decision finding that the RISC decision on his Brady claims was neither contrary to, nor an unreasonable application of, federal law. He asserts that the state courts applied a legal standard for the non-disclosure of exculpatory evidence which differed from the requirements of Kyles, 514 U.S. 419: instead of assessing whether the non-disclosure "undermine[s] confidence" in the verdict, id. at 435, the state court based its decision on (1) whether the information was obviously exculpatory to the prosecutors at the time of the non-disclosure and (2) whether the jury would have convicted Briggs even with the new information -- standards, he contends, that were rejected in Kyles.

Under well-established Supreme Court law, in order to establish a Brady violation for habeas corpus purposes, a petitioner must establish that (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the Government suppressed the evidence; and (3) prejudice ensued from the suppression (i.e., the suppressed evidence was material to guilt or punishment). Strickler v. Greene, 527 U.S. 263, 281-82

(1999). To warrant relief, "the nondisclosure [must be] so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Id. at 281. See also Conley v. United States, 415 F.3d 183 (1st Cir. 2005) (same).

As to the materiality of nondisclosed impeachment evidence, the First Circuit has articulated the application of the Supreme Court's Strickler and Kyles principles as follows:

> Impeachment evidence must be material before its suppression justifies a new trial. The suppression of impeachment evidence is "material" when a reasonable probability exists "that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." Strickler, 527 U.S. at 289. A "reasonable probability" exists if the Government's evidentiary suppression undermines confidence in the verdict. Kyles v. Whitley, 514 U.S. 419, 434 (1995).

Conley, 415 F.3d at 188.

Here, as this Court has previously found, the RISC's finding that Ayers's statement in the Fuller case was not material to the Briggs case was not contrary to federal or Supreme Court law. First, the materiality standard used by the RISC was not so at odds with Brady law as to be contrary to that law. As noted in Strickler, the test for a Brady violation includes an inquiry as to whether "the result of the trial would have been different if the suppressed [evidence] had been [timely] disclosed to the defense." Strickler, 527 U.S. at 289.[4] Here, the RISC noted that in view of

[4] Supreme Court iterations of Brady principles post-Strickler have included references to the likelihood of a different trial result. In Banks v. Dretke, 540 U.S. 668 (2004), the Supreme

all of the evidence and defense counsel's extensive cross-examination of Ayers regarding his cooperation with State, the additional information concerning Ayers's Fuller statement would not have changed the result. Briggs III, 886 A.2d at 758.

The fact that the RISC did not specifically mention the "undermines confidence" standard set forth in Kyles does not mean that its decision was contrary to law. In fact, based on the aforementioned Brady principles, that standard is simply an elaboration of what was meant by materiality -- i.e., a "reasonable probability" that the result of the trial would have been different if the suppressed evidence had been disclosed, with a "reasonable probability" existing if the Government's suppression of the exculpatory evidence undermines confidence in the verdict. See Conley, 415 F.3d at 188.

Moreover, even under the standard articulated in Kyles, this Court is not persuaded that the nondisclosure of information concerning Ayers's statement in the Fuller case was such as to undermine confidence in the Briggs verdict.[5] The undisclosed

---

Court, after acknowledging that the touchstone on materiality was the Kyles inquiry as to whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," then stated, "In short, Banks must show a reasonable probability of a different result." Id. at 699 (internal quotation marks omitted).

[5] In fact, the state trial court's ruling specifically relied on Kyles' "undermines confidence" standard in denying Briggs's motion for new trial. See Briggs II, 2003 WL 302325 at *2, *7.

statement went not to the question of whether Briggs committed the offense but rather to Ayers's credibility as a witness. That credibility was, as the state court noted, extensively attacked by defense counsel at trial, who repeatedly highlighted Ayers's offers to cooperate with the State in exchange for lenient treatment as to his own offenses and who characterized Ayers as a "Judas." See Appendix to Petitioner's Memorandum in Support of Objection to State of Rhode Island's Motion to Dismiss, Tab L at 219-260.

Thus, this Court reaffirms its conclusion that the RISC's finding concerning the materiality of the nondisclosed evidence of Ayers's Fuller statement was not contrary to federal and Supreme Court law, and Briggs's claim on this point fails. This Court further finds that this conclusion is not a matter on which reasonable jurists could differ.

2. Unreasonable Determination of Facts

Briggs further challenges the refusal of the state courts[6] to permit inquiry into the full relationship between Ayers and the State and their rulings regarding the new information that was before them on this point, claiming that reasonable jurists could differ as to whether these rulings constituted an unreasonable

[6] Although not stated specifically, this Court takes this argument to challenge the decisions of both the Rhode Island Superior Court and the RISC.

determination of the facts.[7] He contends that the information before the state courts suggested there was an ongoing relationship between Ayers and the State in which Ayers functioned as a professional informant, who was compensated for his information and assistance by being accorded lenient treatment with respect to various charges against him.

However, as this Court noted in its previous ruling, the evidence produced by Briggs on this point -- namely, three additional prior convictions of Ayers that were disclosed post-trial[8] and his statement in the Fuller case -- was addressed at the hearing on Briggs's motion for new trial and by the RISC on appeal. See Briggs IV, 2008 WL 185647 at *10. The state courts also considered the fact that Ayers later recanted his Fuller statement as based on false information and found that Ayers was the conduit rather than the source of such false information. See Briggs III, 886 A.2d at 758 and n.12. The only "new" fact presented by Briggs in the instant application -- that one of Briggs's prosecutors at

---

[7] The heading for this portion of Briggs's application is denoted "unreasonable application of law," but his substantive argument asserts an unreasonable determination of facts by the state courts, and this Court treats it as such.

[8] Three additional prior convictions of Ayers were disclosed after the trial commenced but prior to Ayers's testimony and another three convictions were not disclosed until the post-trial hearing on the motion for new trial. In view of the more than 30 convictions of Ayers that were timely disclosed, the sequence and timing of these additional disclosures does not change the result here.

his trial was also the prosecutor at a previous unrelated state court disposition proceeding involving Ayers conducted almost three years prior to Briggs's trial (see Appendix, Exh. FF) -- falls far short of portraying an ongoing Ayers-State relationship that would undermine confidence, even debatably, in the Briggs verdict.

In short, this Court is unable to say that the state courts' conclusion that no new trial was warranted and their disinclination to allow collateral exploration of Ayers relationship with state police and other law-enforcement in unrelated matters constituted an unreasonable determination of the facts or was otherwise an unreasonable application of federal and Supreme Court law, particularly in view of the presumption of correctness in the habeas context of factual determinations made by state courts. See 28 U.S.C. § 2254(e)(1); Norton, 351 F.3d at 7 (acknowledging statutory presumption).

Even under the Kyles standard asserted by Briggs, this Court is not persuaded that the new evidence proffered by Briggs undermines confidence in the verdict, in light of defense counsel's extensive cross-examination of Ayers at trial focusing on his informant status. Moreover, even assuming Briggs could show an ongoing relationship between Ayers and state law-enforcement in which Ayers was a "compensated" informant, this fact would not likely be sufficient to undermine confidence in the outcome or otherwise to give rise to a reasonable probability that result of

the trial would have been different. See Strickler, 527 U.S. at 289; Kyles, 514 U.S. at 435. This Court further finds that this conclusion is not a matter on which reasonable jurists could differ, so as to warrant the issuance of a COA.

Briggs also invokes the U.S. Supreme Court's decision in Banks v. Dretke, 540 U.S. 668 (2004), to bolster his claims. In that case the petitioner Banks, who had been convicted of capital murder and sentenced to death, claimed that the State had failed to disclose its relationship with two key State witnesses, each of whom's testimony in the guilt and penalty phases directly implicated him in the murder. One witness, Charles Cook, at whose residence the murder weapon was found, testified that Banks had admitted on the day of the murder to "having kill[ed] the white boy for the hell of it," 540 U.S. at 677. The other witness, Robert Farr, prompted Banks at the State's behest to obtain a gun for use in future armed robberies, thereby showing Banks's proclivity to commit crimes of violence. Id. at 678-80.

During cross-examination at trial Cook denied having any prior discussions with law enforcement concerning his testimony, and Farr denied that he ever took money from police in exchange for his cooperation. Id. at 677-78 The prosecution took no action to correct these statements during the guilt and penalty phases of trial, postconviction proceedings or on appeal. Id. at 677-83. It was only after the commencement of Banks's federal habeas

proceeding that Banks learned that Cook had been coached extensively by police about his anticipated trial testimony, that police threatened him with imprisonment if he failed to cooperate, and that Farr was a paid informant who cooperated with police in setting up Banks's arrest. See id. at 684-687. The Supreme Court found that the State's failure to disclose the contacts that each witness had had with law enforcement prior to their respective testimony constituted a Brady violation warranting habeas relief. Id. at 703.

The distinctions between Banks and the present case are substantial. The suppressed information at issue in Banks concerned conduct that played a crucial role in the conviction - namely, the extensive police coaching of Cook with respect to his trial testimony and the fact that Farr was a paid police informant whose prompting of Banks to retrieve his firearm for future use was instigated by law enforcement officials. Here, by contrast, the undisclosed information about the State's witness concerned (1) additional prior convictions of Ayers, which were merely cumulative to the numerous convictions that had been disclosed, and (2) the fact that Ayers provided law enforcement with a statement in a separate, unrelated case based on information that was later found to be false. Neither of these facts went directly to Briggs's guilt or innocence. Unlike Farr or Cook, Ayers played no part in the events surrounding the murder for which Briggs was convicted or

the investigation of that murder, and authorities had no role in eliciting Briggs's admissions to Ayers. Compare Banks, 540 U.S. at 677-79. Moreover, unlike counsel for Banks, Briggs's counsel knew during trial that Ayers was a prison informant. Also in contrast to the State witnesses in Banks, Ayers was subjected to extensive cross-examination about his willingness to gather information about his fellow inmates in exchange for favorable treatment; Ayers's informant relationship was examined in state post-trial proceedings as well. Simply put, Banks does little to assist Briggs's argument here.[9]

C. Hearing and Discovery

This Court also declines to issue a COA regarding its rulings on Briggs's request to conduct discovery and for an evidentiary hearing regarding the informant relationship between Ayers and the State. In ruling on these requests previously, this Court thoroughly discussed each request.

---

[9] In his application Briggs briefly suggests that, depending on the extent of Ayers's relationship with law enforcement, Briggs's statements to Ayers could have been elicited by Ayers at the instigation of the authorities, in violation of Massiah v. United States, 377 U.S. 201, 206 (1964). (See COA App. at 6.) Under Massiah, statements obtained from a defendant in the absence of counsel and without proper waiver may not be used against the defendant at trial. See also Michigan v. Jackson, 475 U.S. 625, 629-30 (1986) (same). However, there is no evidence in the record that Ayers elicited incriminating statements from Briggs at the behest of law enforcement. Rather, the record shows that it was Ayers who initiated contact with the authorities concerning Briggs's statements. Thus, this argument likewise fails.

This Court reiterates its finding that Briggs has not shown good cause to conduct discovery, see Rule 6(a) of the Rules Governing 2254 Cases, as the issues on which he sought discovery had already been developed in the state court proceedings, and the discovery requests he now proposes are open-ended. (See Briggs IV, 2008 WL 185647 at *6-8.) Nor has Briggs shown that an evidentiary hearing was warranted, where the facts had previously been developed in state court and Briggs has failed to demonstrate a genuine issue of fact to be resolved in such a hearing. Moreover, this Court has already reiterated that Briggs has not shown that the state courts made unreasonable determinations of fact regarding his claims and that merely because the factual issues were resolved against Briggs does not entitle him to hearing. See Pike v. Guarino, 492 F.3d 61, 70 (1st Cir. 2007) ("[f]ederal habeas is a collateral proceeding; particularly after AEDPA, it is not intended to provide a forum in which to retry state cases") (citing Bell v. Cone, 535 U.S. 685, 693 (2002)).

This Court further finds that its rulings denying the requests for discovery and hearing are not ones on which reasonable jurists could differ.

B. Motion for Reconsideration

For all of the reasons that this Court denies a COA in this matter, the Court also finds that no further reconsideration of

these claims is necessary and therefore the motion for reconsideration is likewise DENIED.

III. Conclusion

For the reasons stated above, Briggs's motion for a COA and/or Reconsideration of this Court's previous rulings denying habeas relief is denied.

SO ORDERED.

WESmith

William E. Smith
United States District Judge
Date: 6|30|08